UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD,<br><br>Plaintiff,<br>v.<br><br>REED ELSEVIER INCORPORATED, d/b/a LexisNexis, Lexis Nexis Risk & Information Analytics Group, Inc.,<br><br>Defendant. | ) | C.A. No. 06 CA 11370 MLW |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, defendant Reed Elsevier Inc. submits this statement of undisputed material facts in support of its Motion for Summary Judgment.

**A. Reed Had No Involvement with Varad Concerning the Allegations in the Complaint Prior to the Filing of this Lawsuit.**

1. Reed Elsevier Inc. ("Reed") is a corporation conducting business at 275 Washington Street, Newton, Massachusetts. **Tab 1** (Affidavit of Nancy Nash ("Nash Aff."), ¶ 2). Reed is a member of the Reed Elsevier Group, plc. **Tab 2** (Affidavit of John M. Byrne ("Byrne Aff."), ¶ 4). Reed is a provider of information driven services and products. **Tab 1,** ¶ 2.

2. Reed is a separate legal entity from Lexis Nexis Risk and Information Analytics Group, Inc. ("Lexis Nexis Risk"), the named "d/b/a" in this lawsuit. **Tab 1,** ¶ 3. Reed is not doing business as "LexisNexis, Lexis Nexis Risk and Information Analytics Group, Inc." Id., ¶ 4.

3. In 2004, Reed acquired Seisint, Inc. ("Seisint"). **Tab 2,** ¶ 4. Reed is a separate legal entity from Seisint, a Florida corporation with its principal place of

Dockets.Justia.com

business at 6601 Park of Commerce Blvd., Boca Raton, Florida. Id., ¶¶ 5-7. Reed does not have an office at 6601 Park of Commerce Blvd., Boca Raton, Florida. Id., ¶ 8.

4. From April 2006 through the filing of this lawsuit, all of the communications and correspondence regarding the claims in this lawsuit were between plaintiff Christine Varad ("Plaintiff" or "Varad") and Seisint. **Tab 3,** ¶ 7 (Second Affidavit of John M. Byrne ("Byrne 2d Aff.")), see also **Tab 4,** ¶ 3 (Affidavit of Henry Horbaczewski ("Horbaczewski Aff.")).

5. Prior to the institution of this lawsuit, neither Reed nor Lexis Nexis Risk had any communications or correspondence with Varad regarding the allegations set forth in the Complaint. Id. Nor did either entity receive a demand letter from Varad pursuant to M.G.L. c. 93A § 9. Id.

6. At no time has Reed or Lexis Nexis Risk provided any information to Gall & Gall Company, Inc. ("Gall & Gall") concerning Varad. **Tab 5,** p. 13, lines 11-25 (Deposition Transcript of Steven Gall ("Gall Tr.")).

**B. Seisint, the Entity that Provided Information to Gall & Gall Concerning Varad, Did Not Function as a Credit Reporting Agency, as Defined by the Fair Credit Reporting Act.**

7. Seisint is a provider of information management products and services. **Tab 3,** ¶ 2 (Byrne 2d Aff.). Seisint owns Accurint, a service and database of information that provides identity validation and verification. Id.

8. On January 23, 2006, Varad applied for a temporary research assistant position with F&W Publications, Inc. ("F&W"). **Tab 6,** ¶ 2 and Exhibit A thereto (Affidavit of Richard Wallace ("F&W Aff."). The position at F&W was a temporary position, set to run from February 6, 2006 through April 28, 2006. **Tab 6,** ¶ 3.

9. After receiving Varad's application, F&W requested that Gall & Gall provide F&W with certain information concerning Varad. **Tab 5**, pp. 6-7. Specifically, F&W requested that Gall & Gall perform four separate searches on Varad – a social security search, an address source manager search, a county criminal search, and a national criminal search. Id., p. 7.

10. In response to F&W's request, Gall & Gall conducted the four searches - a social security search through TransUnion, an address source manager search through Seisint, a county criminal search done by runners for Gall & Gall, and a national criminal search through National Background Data. Id., pp. 9 -14.

11. Gall & Gall then compiled the four separate search results into a report entitled "Applicant Screening Report," which it sent to F&W. Id., pp. 7-8, and Exhibit 1 thereto.

12. The information provided to Gall & Gall by Seisint was from Seisint's "Accurint" database, which information pertained solely to the verification of Varad's identity – her name, current and prior address information, date of birth, partially masked social security number, and possibly telephone number information. Id., p. 15, lines 10-13.; see also **Tab 3**, ¶ 4. This information is reflected in the section of the Applicant Screening Report entitled "address source manager." **Tab 5**, Exhibit 1 thereto.

13. The information provided by Seisint was used by Gall & Gall only to confirm Varad's identity - which is the only permitted use under Seisint's contract with Gall & Gall. **Tab 5**, pp. 15, 19, and Exhibit 2 thereto. Gall & Gall did not use the information provided by Seisint to make an employment decision about Varad, or for any other purpose. **Tab 5**, p. 15, lines 10 – 23. In fact, Gall & Gall's contract with Seisint,

which governs Gall & Gall's use of information obtained through Accurint, specifically provides that Accurint information cannot be used a factor in determining an applicant's eligibility for employment, or whether the applicant should be employed. Id., p. 19 and Exhibit 2 thereto; see also **Tab 3,** ¶ 9.

14. Seisint did not provide any other information to Gall & Gall concerning Varad. **Tab 3,** ¶ 4; see also **Tab 5**, pp. 13-14, lines 24 – 3.

15. None of the information provided to Gall & Gall concerning Varad was from Reed or Lexis Nexis Risk. **Tab 5,** p. 13, lines 11-25.

**C. F&W Had No Issue with the Applicant Screening Report and Continued To Employ Varad for the Duration of Her Temporary Position.**

16. Varad began her temporary employment with F&W on February 6, 2006 and worked through April 28, 2006, as per the terms of her offer letter. **Tab 6,** ¶ 5; see also **Tab 7,** pp.34-35, lines 14-1, p. 116, lines 22-24 (Deposition Transcript of plaintiff Christine Varad ("Varad Tr.")).

17. Shortly after she began her temporary employment with F&W, F&W received the Applicant Screening Report from Gall & Gall. **Tab 6,** ¶ 4. After receiving the Applicant Screening Report, F&W continued to employ Varad through the duration of her temporary position. Id., ¶ 5. If F&W had believed that Varad had lied on her employment application, it would not have employed her for the duration of her temporary position. Id., ¶ 4.

18. In fact, F&W had no issue or problem with the Applicant Screening Report, and, as Varad admitted at her deposition, F&W did not take any adverse action against Varad based on the Report. Id., see also **Tab 7,** p. 138, lines 14-21. Nor did the Applicant Screening Report conflict with Varad's employment application, because the

employment application only sought address history for the prior ten years, and the address Varad claims is incorrect is from 1992, outside the ten year period. Compare **Tab 6** at Exhibit A (employment application) with **Tab 5** at Exhibit 1 (Applicant Screening Report). The only address Varad listed on her application was 88 Greenfield Lane, Scituate, Massachusetts – an address that she has lived at from at least 1995 through the present. **Tab 7**, p. 5, lines 17-19. Varad did not list a Burlington, Massachusetts address that she claims she lived at from 1987 through 1991. **Tab 6** at Exhibit A.

19. Varad worked at F&W through April 28, 2006, the conclusion of her temporary position. **Tab 6,** ¶ 5. Varad did not apply for any other positions at F&W. Id.; see also **Tab 7**, p. 117, lines 17-21. Had she done so, the Applicant Screening Report would not have been an issue for F&W. **Tab 6,** ¶ 5.

**D. Varad Contacts Gall & Gall and Seisint Regarding the 1992 Address Contained in the Applicant Screening Report**

20. In April 2006, Varad sent a letter to Gall & Gall concerning the Applicant Screening Report, claiming that a Sioux Falls, South Dakota address that appeared on the Report for one month – June 1992 – was not correct, and that the Report did not contain the Burlington, Massachusetts address. **Tab 7,** Exhibit 11 thereto. Varad does not believe that she updated her driver's license to reflect the Burlington, Massachusetts address. **Tab 7**, pp, 8-9.

21. In response to Varad's claim, Gall & Gall deleted the 1992 address off of the Applicant Screening Report, and sent an updated Applicant Screening Report (the "Second Applicant Screening Report") to F&W and Varad. **Tab 5,** p. 24 and Exhibits 3 & 4 thereto. Gall & Gall did not run any new searches with regard to the Second

Applicant Screening Report; rather it simply took out the 1992 address information that Varad claimed was incorrect. Id., p. 24, lines 11-18.

22. Further, in response to Varad's inquiry, Gall & Gall told Varad that "Address Source Manager [information] is provided by ACCURINT, a division of Lexis Nexus [sic]…". Id. at Exhibit 3. Gall & Gall did not identify Lexis Nexis Risk or Reed as the source of the address information. Id., p. 13, lines 11-23.

23. In April 2006, Varad wrote a letter to "Lexis Nexis Accurint," in Boca Raton, Florida, claiming that certain address information that was provided to Gall & Gall from Accurint's database was incorrect. **Tab 3,** ¶ 5. In the letter, Varad stated that Gall & Gall identified "Lexis Nexis Accurint databases" as the source of the disputed address information. **Tab 8** (April 17, 2006 letter from Varad, attached as Exhibit 1 to the Affidavit of Kristin M. Cataldo "Cataldo Aff." submitted herewith). Varad did not refer to Reed or Lexis Nexis Risk in her April 17, 2006 letter. Id.

24. On April 20, 2006, Seisint responded to Varad's April 17th letter, on Accurint letterhead, requesting that Varad fill out a form specifying the allegedly incorrect information so that Accurint could attempt to provide her with the source of the disputed address information. **Tab 3** at Exhibit A.

25. After making inquiry, Seisint determined that the address information that Varad was disputing had been provided by one or more of the three national credit reporting agencies, and gave Varad the contact information for each of those agencies. Id. ¶ 7 and Exhibit B thereto (May 23, 2006 letter to Plaintiff). Seisint urged Varad to contact those agencies and correct the information at the source, because the information

in Seisint's Accurint database is purchased from outside companies that collect the data, and as such Accurint only provides the data that was provided to it. Id. ¶ 8.

26. In response to Varad's inquiry, Seisint also contacted Gall & Gall to determine whether Gall & Gall had used the information provided from Seisint's Accurint database in accordance with its contract with Gall & Gall. Id., ¶ 9. Seisint's contract with Gall & Gall specifies that, with regard to employment purposes, Gall & Gall is only permitted to use Accurint information for identity verification. Id., and Exhibit C thereto. Gall & Gall is prohibited from using Accurint information for any purpose that falls within the purview of the Fair Credit Reporting Act. Id.

27. Seisint's audit of Gall & Gall confirmed that the information concerning Varad from Seisint's Accurint database that was provided to Gall & Gall was used in accordance with their contract, for identity verification only. Id., ¶ 11. On June 20, 2006, Seisint informed Varad of the results of its audit of Gall & Gall. Id.; see also and Exhibit D thereto (June 20, 2006 letter to Plaintiff).

28. Despite Seisint's efforts to respond to and aid Varad in her inquiry, on June 3, 2006, Varad sent another letter to "Lexis Nexis Accurint" at Seisint's corporate headquarters in Boca Raton, Florida, contending that "Lexis Nexis Accurint's" claim that the Accurint database is not governed by the Fair Credit Reporting Act is an unfair and deceptive act under c. 93A. Id., ¶ 12 and Exhibit E thereto (June 3, 2006 letter from Plaintiff). Varad did not refer to or mention Reed or Lexis Nexis Risk in this letter.

29. In response to Varad's June 3, 2006 letter, Seisint again explained that it is not a consumer reporting agency, and that it does not correct information it obtains from third parties – but rather simply gathers and reports the information it receives. Id. ¶

12 and Exhibit D thereto. Seisint again urged Varad to contact the source of the information to correct it. Id.

**E. Varad Has Not Incurred Any Damage As a Result of the Conduct Alleged in the Complaint.**

30. Varad graduated from New England School of Law in 2001. **Tab 7**, pp. 13-14). Varad sat for the Massachusetts bar exam twice – in July 2001 and February 2002. Id. She failed both times. Id., p. 14-15. Varad also sat for the Maine bar exam twice, in July 2005 and February 2007, and failed both of those exams as well. Id. In order to be considered for admission to the bar of Maine or Massachusetts, an applicant must pass the bar exam. **Tab 8**, Exhibits 2 & 3 thereto (Rules of the Massachusetts Supreme Judicial Court, 3.01 § 4.1 and Maine Bar Admission Rules, Rule 10(a)).

31. The Maine Board of Bar Examiners was not provided with the Accurint Report, or any other information, from Seisint, Reed or Lexis Nexis Risk concerning Varad. **Tab 9** (Reed's Response to Plaintiff's First Set of Interrogatories, Response No. 9); see also **Tab 8**, Exhibit 4 (Objection of Thomas J. Quinn and the Maine Board of Bar Examiners to Plaintiff's Notice of Deposition).

32. The Massachusetts Board of Bar Examiners was not provided with any information concerning Varad from Seisint or Lexis Nexis Risk. **Tab 10**, p. 5 (Defendant's Response to Plaintiff's First Request for Admissions).

33. Applications for the Massachusetts bar exam are publicly available, and thus Reed obtained certified copies of Varad's bar applications for the July 2001 and February 2002 exams. **Tab 8**, Exhibits 5 & 6. (Varad's 2001 & 2001 applications for the Massachusetts Bar). Neither of these applications request any address history; they only

require a current address. Id. Thus, Varad did not list her prior addresses on her Massachusetts bar applications. Id.

34. Varad's application with the Massachusetts Bar Examiners included an affidavit Varad submitted to the Supreme Judicial Court regarding her petition for a disability accommodation in taking the Massachusetts bar. In the affidavit, Varad claims that the Board's denial of granting her a reasonable accommodation is "causing [her] to suffer additional severe financial losses and continued unfair limitations on [her] ability to earn a living due ***solely*** to unlawful discrimination based on [her] disability." **Tab 8** at Exhibit 7 (emphasis added).

REED ELSEVIER INC.

By its attorneys,

/s/ Kristin M. Cataldo
T. Christopher Donnelly (BBO #129930)
Kristin M. Cataldo (BBO #654033)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

Dated: August 31, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August, 2007, I caused a copy of the foregoing to be served on Christine M. Varad, P.O. Box 583, Milton, MA 02186 via first class mail.

/s/ Kristin M. Cataldo
Kristin M. Cataldo