UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTINE VARAD, )
) C.A. No. 06 CA 11370 MLW
Plaintiff, )
v. )
)
REED ELSEVIER INCORPORATED, )
d/b/a LexisNexis, Lexis Nexis Risk & Information )
Analytics Group, Inc., )
)
Defendant. )

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 5

Dockets.Justia.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

* * *

CHRISTINE VARAD,

Plaintiff,

vs. CASE NO. 06 CA 11370MLW

REED ELSEVIER INCORPORATED,

d.b.a. LEXISNEXIS,

LEXISNEXIS RISK &

INFORMATION ANALYTICS GROUP,

INC.,

Defendant.

* * *

Deposition of STEVEN GALL,

Witness herein, called by the Defendant for cross-examination pursuant to the Rules of Civil Procedure, taken before me, Stacey M. Mortsolf, a Notary Public in and for the State of Ohio, at the offices of Faruki, Ireland & Cox, 500 Courthouse Plaza, S.W., 10 North Ludlow Street, Dayton, Ohio, on Thursday, May 31, 2007, at 11:53 a.m.

* * *



2dc69e84-eea6-4650-876b-2913dc08bfbf

Q. And did you found Gall & Gall?
**A. I was one of the founders, yes.**
Q. How long ago was that?
**A. Twenty years.**
Q. And can you briefly describe for me the business of Gall & Gall?
**A. We're an information company. We do employment background screening and tenant screening for companies.**
Q. And what are your duties and responsibilities as president of Gall & Gall?
**A. I oversee day-to-day operations and marketing of the company.**
Q. In 2006 did Gall & Gall receive a request from a company called F & W Publications, Inc., to provide F & W with information concerning a Christine Varad?
**A. Yes.**
Q. And if I refer to F & W just as F & W, you understand that that's F & W Publications, Inc.?
**A. Yes.**
Q. And if I refer to Gall & Gall, you will understand that that's Gall & Gall Company?



**A. Yeah.**
Q. Okay. And can you tell me what was F & W's request of Gall & Gall?
**A. Standard report, which is a Social Security search, which at that time we performed through TransUnion, address source manager report, which we get through Cynex (phonetic) or --**
Q. Seisint?
**A. Seisint. Right. And then for them we do a county by county criminal and a national criminal search, and that's through NBD.**
Q. NBD, you said?
**A. Yes.**
Q. Do you know what that stands for?
**A. National Background Data. They're out of Florida.**
Q. So F & W requested four separate searches with regard to Ms. Varad?
**A. Yes.**
Q. And did Gall & Gall perform those four searches for F & W?
**A. Yes.**
Q. And was that information that Gall & Gall received from the searches compiled in some sort of report?



**A. Yes.**
**(Thereupon, Defendant's Exhibit 1 was marked for purposes of identification.)**
**BY MS. CATALDO:**
Q. Mr. Gall, I'm showing you what's been marked as Exhibit 1 to your deposition. Do you recognize this document?
**A. Yes.**
Q. What is this document?
**A. This is the applicant screening report which would have went back to F & W Publications upon completion of the report.**
Q. And this is one of the documents that you referred to earlier that was produced in response to the subpoena?
**A. Yes.**
Q. Now, was it the regular business of Gall & Gall to make the report that we've marked as Exhibit 1?
**A. Yes.**
Q. And was the report that's been marked as Exhibit 1 made on or about February 6th, 2006?



**A. Yes.**
Q. Was the report that's been marked as Exhibit 1 made by an employee of Gall & Gall?
**A. Yes.**
Q. And was the report that's been marked as Exhibit 1 kept in the regular course of Gall & Gall's business activities?
**A. Yes.**
Q. And as you stated, I believe, a minute ago, this report that we've marked as Exhibit 1 was provided to F & W?
**A. Yes.**
Q. I'd like to actually walk through the information on this report. There are basically four sections in this report, is that correct?
**A. Yes.**
Q. Okay. And if we look at -- well, first of all, does each of these sections correspond to one of the searches that you previously described for me?
**A. Yes.**
Q. So if we look at the first section on page one of Exhibit 1, that's entitled





2dc69e84-eea6-4650-876b-2913dc08bfbf

county criminal record search, do you see that?
**A. Yes.**
Q. Okay. And was the information in this section of the report the result of the county criminal search that Gall & Gall performed?
**A. Yes.**
Q. And that information was not provided by Seisint, is that correct?
**A. Correct.**
Q. That information was -- well, tell me how you -- strike that. How was the information in the section under the county criminal records heading retrieved?
**A. We have thirty-three hundred and eighty counties in the United States, give or take a county. We have over two thousand runners which physically go into the courts and pull the records upon our request, and they return said records or no records found back to us.**
Q. So if we move on then to the next section, which states -- has the heading instacriminal national multistate search, do you see that?



**A. Yes.**
Q. And was the information in this section of Exhibit 1 the result of a multistate criminal search performed by Gall & Gall?
**A. Yes. It would have been -- actually, the national is subreferred to as a multistate because it includes all the states with some states having very limited information. And as you can tell by reading page two, it also includes sex offender information.**
Q. Okay. And was this information retrieved -- I believe earlier you referred to an entity called NBD?
**A. Yes. National Background Data.**
Q. And the information in this section of the report was not provided by Seisint, correct?
**A. No.**
Q. If we look at the --
**A. Well, let's go back. You said that is correct. Yes, that's correct, it was not provided by --**
Q. Seisint. Okay. If we then look to the third page of Exhibit 1, there's a



header that's entitled Social Security search. Do you see that?
**A. Yes. That was pulled through TransUnion.**
Q. And the information in this section of the report, that was done through Gall & Gall's search of TransUnion?
**A. Right. The referral list would list what bureau -- particular bureau we pulled that through, which was in Pennsylvania.**
Q. And none of the information in this section, the Social Security section, was provided to Gall & Gall by Seisint, correct?
**A. Correct.**
Q. And then if we look at the last section of this report, which begins on page three and continues to page four, it's entitled address source manager. Do you see that?
**A. Yes.**
Q. And was the information in this section of Exhibit 1 the result of Gall & Gall's address source manager research?
**A. Yes.**
Q. And where did that information -- strike that. Where did the information under



the address source manager section come from?
**A. Seisint.**
Q. And when you refer to Seisint, Seisint actually has a database called Accurint, correct?
**A. Correct.**
Q. And that's the database that Gall & Gall pulled the information under the address source manager section from?
**A. That's correct.**
Q. Was any of the information that's contained in Exhibit 1 -- strike that. Did any of the information contained in Exhibit 1 come from the defendant in this case, Reed Elsevier, Incorporated?
**A. No.**
Q. Did any of the information in this report that we've marked as Exhibit 1 come from the entity that's been named in this litigation as the DBA or the doing business as of Reed, which is LexisNexis comma, LexisNexis Risks and Information Analytics Group?
**A. No.**
Q. And the only information in the report that we've marked as Exhibit 1 that came

Page 14

from Seisint was the address source manager information, correct?
**A. Correct.**
Q. What did Gall & Gall use the address source manager information for?
**A. It's used for strictly identification purposes of the applicant, to place addresses that come up on that report with addresses that may be on the application. It gives you additional areas to search for criminal background.**
Q. And was that done in this case?
**A. Yes.**
Q. Let me go back. With regard to -- you said it also gives you additional addresses to -- to search. Can you explain for me --
**A. Well, many people don't -- either their application or the company's application's inadequate because they want to make it a quick process for people to apply or people tend to only list their last one address or two addresses. We check a person's background, depending upon the state laws, seven to ten years. So if we look for those addresses, we find one that would fall between**

Page 15

**that seven and ten year rule, we would check their criminal background within that address.**
Q. And the only criminal background check that was done with regard to Ms. Varad was in Massachusetts, the jurisdiction of Massachusetts?
**A. Absolutely.**
Q. Correct?
**A. Yes.**
Q. So Gall & Gall in this case only used the address source manager information to confirm Ms. Varad's identity?
**A. Yes.**
Q. Is that correct? Okay. And the information in the address source manager section of Exhibit 1 was not used as a factor in determining whether or not Ms. Varad should be offered employment by F & W?
**A. No, it was not.**
Q. Was the information in the address source manager section used for any other purpose by Gall & Gall?
**A. No. Never would be.**
Q. Does Gall & Gall have a contract with Seisint?

Page 16

**A. Yes, it does.**
Q. And does Gall & Gall's contract with Seisint govern Gall & Gall's use of the Accurint database?
**A. Allows us to use it for employment purposes.**
**(Thereupon, Defendant's Exhibit 2 was marked for purposes of identification.)**
**BY MS. CATALDO:**
Q. Mr. Gall, I'm showing you what's been marked as Exhibit 2 to your deposition. Do you recognize this document?
**A. Yes, I do.**
Q. And what is it?
**A. It's a contract we have with Accurint.**
Q. And if we look at the first full paragraph on the first page of Exhibit 2, that starts with the information submitted on this application and agreement, do you see that?
**A. Mm-hmm. Yes.**
Q. And it refers to the fact that the information, which is the Accurint -- the application is for use of the Accurint database, the information is provided by

Page 17

Seisint, Inc. Do you see that?
**A. Yes.**
Q. Okay. So this is Gall & Gall's contract with Seisint?
**A. Yes.**
Q. Okay. And if you can turn to the last page of what we've marked as Exhibit 2, this contract was signed by Daniel Meyers on behalf of Gall & Gall?
**A. Yes.**
Q. I'll ask you to turn to page two of Exhibit 2, and there's a section that says part five, terms and conditions of use. Do you see that?
**A. Yes.**
Q. And this section five of Exhibit 2 addresses Gall & Gall's use of the information provided by Seisint through its Accurint database, correct?
**A. Right.**
Q. And if we look at the section that's been checked off here, it states that Gall & Gall is permitted to use the Accurint information for application verification including but not limited to employment

Page 18

application verification. Did I read that correctly?

**A. Yes.**

Q. So the only use that Gall & Gall with regard to employment applications could use the Accurint information for is to verify the applicant's identity, correct?

**A. Correct.**

Q. And it actually goes on to state that Accurint data cannot be used to make employment decisions as outlined in the Fair Credit Reporting Act. Do you see that?

**A. Yes.**

Q. Did Gall & Gall comply with its contractual obligations with Seisint?

**A. Yes, it did.**

Q. And does this contract prohibit Gall & Gall from using information it obtains from Seisint through Accurint for any purpose covered by the Fair Credit Reporting Act?

**A. Could you repeat that?**

Q. I think we just talked about the fact that the contract actually -- strike that. Does this contract prohibit Gall & Gall from using any information it obtains through the

Page 19

Accurint database for purpose covered by the Fair Credit Reporting Act?

**A. Yes.**

Q. I'm not saying -- do you understand my question?

**A. It does restrict it, yes.**

Q. Okay. You cannot use it for that purpose. Okay. And you understand with regard to the Fair Credit Reporting Act with regard to employment applications means that the information could not be used as a factor in determining the applicant's eligibility or whether or not the applicant should be hired?

**A. Yes.**

Q. And Gall & Gall did not use the information it obtained through Seisint to determine whether or not Ms. Varad should be hired, correct?

**A. Correct.**

Q. At some point you were contacted by Ms. Varad with regard to the applicant screening report I believe that we've marked as Exhibit 1, is that correct?

**A. Yes.**

Q. And when did she contact you?

Page 20

**A. In reference to that report?**

Q. (Nods head up and down.)

**A. I believe it was in April.**

Q. Okay. And did she call you?

**A. She called me on several occasions as well as wrote letters.**

Q. And what was the -- why did Ms. Varad call you?

**A. She was extremely upset. She first talked with my customer service director and was very, very upset because the address that appeared on her report, and she hadn't lived there in quite some time in her opinion and something to do with a really bad divorce and the address was where her and her ex lived, and she didn't want any ties to that address and --**

Q. And this was an address that was from 1992 and reflected a residence in South Dakota, is that correct?

**A. Correct.**

Q. And she told you when she called you that that address was associated with her ex-husband?

**A. Yes.**

Page 21

Q. As a result of Ms. Varad's call, did you do anything?

**A. We had the report pulled and went through the report, and it -- on the address source you can't -- like a credit report, if you have an issue with a credit report which is governed, you have it re-researched, so if you're three times late to JC Penney's is what it's reported but you feel you're not, then JC Penney's -- it's in their ballpark. They would report back that, yes, we've confirmed that they were three times late.**

**In this case we don't really have anywhere to go because it's noncompliant, it's not FCRA controlled. It's strictly an address. And in twenty-seven years of my background, which is human resources, I don't know of anyone that has used an address not to hire somebody. So in this case I would look at the fact that we have nowhere to go with it. I mean, for me to get a hold of Accurint and say re-research this address, it's in a database, it's not something that re-researchable. So we just took it off the report and sent an amended report to both Ms. Varad and to F & W.**

Page 22

**(Thereupon, Defendant's Exhibit 3 was marked for purposes of identification.)**
**BY MS. CATALDO:**
Q. Mr. Gall, I'm showing you what's been marked as Exhibit 3 to your deposition. Do you recognize this document?
**A. Yes, I do.**
Q. And what is it?
**A. It's a letter that I sent to Ms. Varad on the 5th of April.**
Q. And this letter actually refers at the bottom to two enclosures, a report and an e-mail. Do you see that?
**A. Yes.**
Q. And were there two enclosures with this letter?
**A. Yes. We sent the report to her and a copy of an e-mail which she had sent me before we even did the report or that I knew she had, you know, had a report requested. I'm not sure of the date.**
**(Thereupon, Defendant's Exhibit 4 marked for purposes of identification.)**
**BY MS. CATALDO:**
Q. I'm showing you what we've marked

Page 23

as Exhibit 4 to your deposition. Is this the updated report that you refer to in Exhibit 3, your letter to Ms. Varad?
**A. Yes, it is.**
Q. And was it the regular business of Gall & Gall to make the report that we've marked as Exhibit 4?
**A. Yes.**
Q. And was the report that's been marked as Exhibit 4 made on or about March 5th of 2006?
**A. No.**
Q. Excuse me?
**A. No. April 5th.**
Q. I'm sorry. April 5th. Why don't we strike that and I'll ask you a clean question.
**A. Okay.**
Q. Was the report that we've marked as Exhibit 4 made on or about April 5th of 2006?
**A. Yes, ma'am.**
Q. And was the report that's been marked as Exhibit 4 made by an employee of Gall & Gall?

Page 24

**A. Yes.**
Q. And was the report that's been marked as Exhibit 4 kept in the regular course of Gall & Gall's business activities?
**A. Yes.**
Q. And I believe you testified a minute ago that in addition to sending this updated report to Ms. Varad, you also sent it to F & W, is that correct?
**A. Yes.**
Q. Now, did Gall & Gall perform any new searches with regard to the information that's contained in Exhibit 4?
**A. No.**
Q. So all you did on Exhibit 4 was remove the address that Ms. Varad had questioned?
**A. Yes.**
**(Thereupon, Defendant's Exhibit 5 was marked for purposes of identification.)**
**BY MS. CATALDO:**
Q. Mr. Gall, I'm showing you what's been marked as Exhibit 5 to your deposition. Do you recognize this document?
**A. Yes.**

Page 25

Q. And what is this?
**A. This is the e-mail that I received from Ms. Varad, referencing a book that I'm sure she never published, but wanted to get a chance to chat with me about background checks and computer data and central registries.**
Q. And was the e-mail that we've marked as Exhibit 5 the e-mail that you enclosed in the letter that we've marked as Exhibit 3?
**A. Yes.**
Q. And at the time that Ms. Varad sent this e-mail to you on February 2nd of 2006, Gall & Gall had already been asked by F & W to provide an investigative report on Ms. Varad, is that correct?
**A. No.**
Q. They had not?
**A. No.**
Q. Okay. So if we look at -- if we go back and we look at Exhibit 4 where it says date ordered on the first page of Exhibit 4 --
**A. You're on Exhibit 1.**
Q. Okay. Well, we'll -- you're looking at Exhibit 1. Okay. If we look at

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD,<br><br>Plaintiff,<br>v.<br><br>REED ELSEVIER INCORPORATED,<br>d/b/a LexisNexis, Lexis Nexis Risk & Information<br>Analytics Group, Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06 CA 11370 MLW |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 5 – EXHIBIT 1

GALL & GALL COMPANY, INC.

## APPLICANT SCREENING REPORT

8555 N DIXIE DR * DAYTON, OH 45414
PHONE 937-264-4900 * 800-759-4255
FAX 937-264-4909 * 800-765-7393

| | | | |
|---|---|---|---|
| FILE # | 75270 / ES1165 | REPORT DATE | 02/06/2006 AMANDA MEYERS |
| REPORT TO | F&W PUBLICATIONS ES1165 | DATE ORDERED | 02/01/2006 AMY BREWER |
| STREET | 4700 E GALBRATH | REPOSITORIES | |
| CITY/ST/ZIP | | TYPE | F&W PUBLICATIONS |

### APPLICANT INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| APPLICANT | VARAD, CHRISTINE M | SOC SEC | 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 | DOB | 04/30/1955 |
| ADDRESS | 88 GREENFIELD LN | CITY/ST/ZIP | SCITATE, MA 02066 | | |

### INVESTIGATIVE

#### COUNTY CRIMINAL RECORDS SEARCH

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | VARAD, CHRISTINE M |
| ALTERNATIVE IDENTIFIERS | MOONEY, CHRISTINE |
| DOB(S) SEARCHED | 04/30/1955 |
| JURISDICTION(S) | MA-PLYMOUTH |

CAUTION: Based On The Information Provided We Searched The Above Mentioned Jurisdiction(s) For Criminal Convictions For No Less Than Ten Years Unless Specified And Found No Individual By This Identification. This Means That No One By This Identification Has Been Found As Convicted Of A Criminal Charge In These Jurisdiction (s). Further Investigation Into Additional Jurisdictions May Be Warranted. Please Call For Assistance.

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | VARAD, CHRISTINE M |
| ALTERNATIVE IDENTIFIERS | MOONEY, CHRISTINE |
| DOB(S) SEARCHED | 04/30/1955 |
| JURISDICTION(S) | MA-NORFOLK |

DEFENDANT'S EXHIBIT 1 5-31-07 SMM
PENGAD 800-631-6989

CAUTION: Based On The Information Provided We Searched The Above Mentioned Jurisdiction(s) For Criminal Convictions For No Less Than Ten Years Unless Specified And Found No Individual By This Identification. This Means That No One By This Identification Has Been Found As Convicted Of A Criminal Charge In These Jurisdiction (s). Further Investigation Into Additional Jurisdictions May Be Warranted. Please Call For Assistance.

#### INSTACRIMINAL NATIONAL (MULTISTATE) SEARCH

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | CHRISTINE VARAD |
| DOB SEARCHED | 04/30/1955 |
| JURISDICTION(S) SEARCHED | AK AOC,AK Sex Offender,AL DOC,AL Sex Offender,AR AOC,AR DOC,AR Sex Offender,AZ Maricopa Superior Archive,AZ Maricopa Felony,AZ Maricopa Misdemeanor,AZ AOC,AZ Pima,AZ Mohave,AZ DOC,AZ Maricopa Superior,AZ Sex Offender,CA Fresno Index,CA Orange,CA Sacramento,CA Riverside,CA Los Angeles,CA Santa Clara,CA San Bernardino,CA Santa Barbara,CA Santa Cruz,CA Alameda,CA Butte,CA Contra Costa Municipal,CA Contra Costa Superior,CA Fresno,CA Indio,CA Marin Municipal,CA Marin Superior,CA San Diego Municipal,CA San Diego Superior,CA San Luis Obispo,CA Santa Clara Municipal,CA Ventura,CA San Mateo,CA Sex Offender,CO Archived Sex Offender,CO Sex Offender,CT Judicial Information System,CT DOC,CT Traffic,CT Sex Offender,CT Out of State Sex Offender,DC DOC,DC Sex Offender,DE Sex Offender,FL Pinellas,FL DOC,FL AOC,FL Osceola,FL Miami Dade,FL Brevard,FL Charlotte,FL Orange,FL Bay,FL Duval,FL Hillsborough,FL Palm Beach,FL Hernando,FL Indian River,FL Lee,FL Pasco,FL Suwannee,FL Monroe,FL Highlands,FL Alachua,FL Broward,FL Sex Offender,GA DOC,GA Bureau of Investigations,GA Decatur Arrest Records,GA Sex Offender,HI Sex Offender,IA DOC,IA AOC,IA Sex Offender,ID DOC,ID Sex Offender,IL DOC,IL Cook,IL Sangamon,IL Peoria,IL Sex Offender,IN DOC,IN Sex Offender,KS DOC,KS Sedgwick,KS Sedgwick Archive,KS Sex Offender,KY DOC,KY Lexington Fayette,KY Sex Offender,LA Sex Offender,MA Sex Offender,MD DOC,MD Sex Offender,ME DOC,ME Sex Offender,MI DOC,MI OTIS,MI Wayne,MI Sex Offender,MN DOC,MN DPS,MN Sex Offender,MO DOC,MO Sex Offender,MO Cape Girard Sex Offender,MO Cole Sex Offender,MO Barton Sex Offender,MO Jefferson Sex Offender,MO Newton Sex Offender,MO Laclede Sex Offender,MO St Louis Sex Offender,MS Hinds,MS DOC,MS Sex Offender,MT DOC,MT Sex Offender,NC AOC,NC Archived DOC,NC DOC,NC Sex Offender,NC Sex Offender,ND AOC,ND Sex Offender,ND Sex Offender,NE DOC,NE Sex Offender,NH DOC,NH Sex Offender,NJ AOC,NJ DOC,NJ Archive DOC,NJ Sex Offender,NM DOC,NM Sex Offender,NV Archive DOC,NV DOC,NV Sex Offender,NY DOC,NY Sex Offender,AppAlert Federal Criminal Data,AppAlert OFAC,OH Portage,OH Greene,OH DOC,OH Sex Offender,OK DOC,OK AOC,OK Sex Offender,OR DOC,OR AOC,OR Sex Offender,PA DOC,PA Supplemental Courts,PA Traffic,PA AOC,PA Sex Offender,Proprietary Offender Data,RI Judicial Technology Center,RI Sex Offender,SC DOC,SC Sex Offender,SD Sex Offender,SD Aberdeen Sex Offender,SD Sioux Falls Sex Offender,TN DOC,TN Davidson Sheriff,TN AOC,TN Nashville,TN AOC,TN Sex Offender,TX Bexar Felony,TX Bexar Misdemeanor,TX Travis Misdemeanor,TX Travis Felony,TX Ft Bend Felony,TX Ft Bend Misdemeanor,TX Montgomery,TX Potter Misdemeanor,TX Potter Felony,TX Denton,TX El Paso,TX Harris Felonies,TX Harris Misdemeanor,TX Dallas,TX Gregg,TX Jefferson,TX Victoria,TX Dept of Public Safety,TX Sex Offender,UT DOC,UT AOC,UT Sex Offender,VA Circuit,VA General District,VA Fairfax,VA Traffic,VA Sex Offender,VT Sex Offender,WA DOC,WA Courts of Ltd Jurisdiction,WA AOC SCOMIS,WA Sex Offender,WI DOC,WI AOC,WI Sex Offender,WV Sex Offender,WY Sex Offender |

CAUTION: Based On The Information Provided We Searched Our Database For The Above Mentioned Jurisdiction(s) For Criminal Convictions And Found No Individual By This Identification. This Means That No One By This Identification Is Within Our Database As Convicted Of A Criminal Charge For These Jurisdiction(s). Therefore It Cannot Be Confirmed That The Applicant Has Not Ever Been Convicted Of A Criminal Charge. Further Investigation May Be Warranted. Call For Assistance!

## SOCIAL SECURITY SEARCH

### SOCIAL SECURITY SEARCH [# 092590]

Record # 01

| | |
|---|---|
| Name | CHRISTINE M VARAD |
| SSN | 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 |
| Address | 88 GREENFIELD LN , SCITUATE, MA 02066 08/01/1993 |
| HAWK | REQUESTED PRODUCT DELIVERED<br>SSN issued from 1966 to 1968; State: MA (input)<br>SSN issued from 1966 to 1968; State: MA (file)<br>INPUT SSN ISSUED: 1966 - 1968; STATE: MA<br>FILE SSN ISSUED: 1966 - 1968; STATE: MA |

### REFERRAL

| | |
|---|---|
| Reporting Bureau(s) | Trans Union<br>P.O. Box 1000<br>Chester, PA 19022<br>800-888-4213 |

### DISCLOSURE

The Information Contained In This Social Security Reports Section Should Only Be Used As A Tool To Further Research And Verifications. Please Call For Assistance.

## REPOSITORIES

### ADDRESS SOURCE MANAGER

| | |
|---|---|
| RESULTS | RECORDS FOUND |
| SSN SEARCHED | 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 |

| FULL NAME / SSN | AGE / DOB | ADDRESS | DATES | PHONE INFORMATION |
|---|---|---|---|---|
| CHRISTINE VARAD<br>013-42-xxxx | | PO BOX 583<br>MILTON, MA 02186 | Sep 05 - Dec 05 | |
| CHRISTINE M VARAD<br>013-42-xxxx | 50<br>Apr 30, 1955 | 88 GREENFIELD LN<br>SCITUATE, MA 02066 | Jun 89 - Aug 05 | (781) 545-0707 |
| CHRISTINE VARAD<br>013-42-xxxx | 50<br>Apr 30, 1955 | CNS # 18027<br>SIOUX FALLS, SD 57117 | Jun 92 - Jun 92 | |
| CHRISTINE VARAD | | CNS 18027 | Jun 92 - Jun | |

| | | |
|---|---|---|
| 013-42-xxxx | SIOUX FALLS, SD 57117 | 92 |
| CHRISTINE MOONEY<br>013-42-xxxx | 88 GREENFIELD LN<br>SCITUATE, MA 02066 | Dec 87 - Dec<br>91 |
| CHRISTINE MOONE<br>013-42-xxxx | 88 GREENFIELD LN<br>SCITUATE, MA 02066 | Jul 87 - Dec<br>90 |

| | |
|---|---|
| Social Security Number | 013-42-xxxx |
| Location | Massachusetts |
| Dates Issued | Jan 01, 1966 - Dec 31, 1968 |

WARNING: This search may not be used as the basis for an adverse action on an applicant. It should only be used to verify or correct an applicant's information, or as a tool to further research of public records or other verifications.

---

DISCLAIMER

Information Contained Here In Meets All The Guidelines Set Forth By The Fair Credit Reporting Act. This Is Confidential Information And Not To Be Divulged Except As Required By Public P=Law P=91-508, 93-579, 94-239. This Report Is Furnished In Response To An Inquiry For The Purpose Of Determining The Propriety Of , Dealing With The Consumer. It Is Based Upon Information Obtained In Good Faith From Sources Deemed Reliable.

---

*** END OF REPORT ***

---

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 5 – EXHIBIT 2

From: unknown Page: 1/5 Date: 10/1/2004 10:42:21 AM

fax 561-893-8090

CAROL ANDERSON
561-893-8086
canderson@accurint.com

Accurint™

**APPLICATION and AGREEMENT**

To Submit Your Application:

1. Print, fill out, and sign Application or complete the Application form online and print it.
2. Include copies of documentation verifying your business and professional license. Examples of necessary documentation include:
   - Business License
   - Professional License
   - Corporate Charter or Similar Certificate of Organization for Partnership/LLC (Certified Copy)
3. Initial ALL pages of the Application, sign where indicated, and fax the Application and supporting documentation to Seisint, Inc. at 561-893-8090.

The information submitted on this Application and Agreement will be used to determine eligibility for accessing information provided by Seisint, Inc. ("Seisint"). Seisint reserves the right to reject this Application and Agreement without reason or for any reason whatsoever, without recourse against Seisint or any of its employees, officers, directors, agents, affiliates, or other designees. Additionally, the applicant hereby authorizes Seisint to independently verify the information provided herein.

**PART 1:** (This section must be filled out entirely.)

**SECTION A: COMPANY INFORMATION**

Company Name Gall & Gall Company, Inc
Physical Address 8555 N. Dixie Dr.
City Dayton State OH Zip 45414
Telephone (937) 264-4900 Company Web Address www.gallgall.com

**SECTION B: ACCOUNT CONTACT INFORMATION**

Last Name Gall First Name Beverly Title CEO
Telephone (937) 264-4900 Extension 222 Fax (937) 264-4903
Email Address bgall@gallgall.com

**PART 2:** (If you choose to be billed on a credit card, fill out this portion and proceed to Part 4.)

**SECTION A: CREDIT CARD APPLICATION** (If you choose to be billed on a credit card, fill out this portion)

We accept MasterCard, Visa, and American Express. For security and authentication purposes, we require the account holder to provide the address to which the credit card company mails the monthly statement.

Cardholder Name
Card Number Expiration (MM/YY)
Credit Card Statement Address
City State Zip
Card Type: ☐ MasterCard ☐ Visa ☐ American Express

By choosing to have a credit card billed directly by Seisint, I hereby authorize Seisint to bill this credit card for the charges incurred for use of Seisint's Accurint service. Additionally, I hereby agree that if the credit card company refuses to pay Seisint for such charges incurred for use of the Accurint Service, the applicant shall be responsible for the payment of such charges.

**PART 3:** (If you choose to be billed directly, fill out this portion and proceed to Part 4.)

**SECTION A: CREDIT INFORMATION** (If you choose to be billed directly, fill out this portion)

By submitting this direct billing application, I certify that I am authorized to apply for credit on behalf of the company named in this Application and Agreement. I further certify that the information I provide relating to this credit application is true and complete. I hereby grant permission to Seisint to verify the credit data relating to the credit information provided herein.

**BILLING CONTACT**

Last Name Gall First Name Beverly Title CEO
Telephone (937) 264-4900 Extension 222 Fax (937) 264 4903
Email Address bgall@gallgall.com
Billing Address 8555 N. Dixie Dr.
City Dayton State OH Zip 45414

*Page 1 of 5*
*Revised April 29, 2004*
________(Initial)

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

DEFENDANT'S EXHIBIT
2
8-31-07 SMM
PENGAD 800-631-6989

D00071

From: unknown Page: 2/5 Date: 10/1/2004 10:42:21 AM

**SECTION B: COMPANY PRINCIPAL(S)**

Principal(s) of Company (required for companies incorporated less than five years and also required for all sole proprietors and partnerships).
Last Name________ First Name________ Title________ SSN________
Last Name________ First Name________ Title________ SSN________
Last Name________ First Name________ Title________ SSN________
Dun & Bradstreet Number________

**BANKING INFORMATION**
Financial Institution Monroe Federal Contact Name________ Title________
Address________
City Dayton State OH Zip 45414
Contact Telephone Number (____)________
Type of Account: ☐ Checking ☐ Savings Account Number________ Extension________

**BUSINESS CREDIT REFERENCES**
Name of Creditor Tazworks
Contact Telephone Number (____)________
Name of Creditor________ Account Number________
Contact Telephone Number (____)________ Account Number________

**PART 4:** (This section must be filled out entirely.)

**SECTION A: TYPE OF BUSINESS**

☐ Sole Proprietor ☐ Corporation ☐ Partnership/LLC State of________
Dun & Bradstreet Number________ Federal Tax ID________

**BUSINESS / PROFESSIONAL LICENSE NUMBER** ________
Date Issued/Expiration Date________ Town/City Issued________
County Issued________ State________

**SECTION B: INDUSTRY CLASS:** (Check the item that best describes the type of business in which you are engaged—**SELECT ONE**.)

☐ Attorney/Law Office
☐ Banking
☐ Child Support Enforcement
☐ Collection
☐ Government
☐ Human Resources
☐ Insurance
☐ Landlord/Management Company
☐ Media
☐ Process Server
☐ University
☐ Utility Company
☒ Other (Specify) Background Screening

**PART 5: TERMS AND CONDITIONS OF USE**

**SECTION A: GLB ACCEPTABLE USES (CHECK ALL THAT APPLY - AT LEAST ONE MUST BE CHECKED)**

The information that the Accurint Service provides to the end user may contain consumer identification information governed by the Gramm-Leach-Bliley Act (GLB). In accordance with GLB, such information may only be used for the following purposes:

☐ **Completion of a transaction authorized by the consumer** including but not limited to the collection of delinquent accounts.
☒ **Application Verification** including but not limited to (a) employment application verification (however, Accurint data cannot be used to make an employment decision as outlined in the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*)), (b) property leasing application information verification (however, Accurint data cannot be used for making a leasing decision as outlined in the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*)), and (c) insurance application information verification (however, Accurint data cannot be used for making a decision to insure an individual or business as outlined in the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*)). Customer represents and warrants that Accurint data will not be used for purposes governed by the Fair Credit Reporting Act.
☐ **Law firm and attorney functions**
☐ **Insurance purposes** including (a) account administration, (b) reporting, (c) fraud prevention, (d) premium payment processing, (e) claim processing and investigation, (f) benefit administration, or (g) research projects
☐ **Fraud detection and prevention**
☐ **Required institutional risk control/dispute resolution** for resolving customer disputes or inquiries

__ **I have no GLB permitted use.**


________(Initial)

This fax was received by GFI FAXmaker fax server. For more information, visit http://www.gfi.com

D00072

**SECTION B: DPPA ACCEPTABLE USES (CHECK ALL THAT APPLY - <u>AT LEAST ONE MUST BE CHECKED</u>)**

The Accurint database also contains driver's license and motor vehicle registration information governed by the Driver's Privacy Protection Act (DPPA). In accordance with DPPA, such information may only be used for the following purposes:

- ☐ Use by a court or other government agency or entity, acting directly on behalf of a government agency. 18 U.S.C. § 2721 (b)(1)
- ☐ Use for any matter regarding motor vehicle or driver safety or theft; to inform an owner of a towed or impounded vehicle. 18 U.S.C. § 2721 (b)(2)
- XX Use in the normal course of business, to verify the accuracy of personal information submitted by the individual to the business and, if the submitted information is incorrect, to obtain correct information, but only for the purpose of preventing fraud by, or pursuing legal remedies against, or recovering on a debt or security interest against, the individual. 18 U.S.C. § 2721 (b)(3)
- ☐ Use in connection with a civil, criminal, administrative, or arbitral proceeding. 18 U.S.C. § 2721 (b)(4)
- ☐ Use by an employer or its agents or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under the Commercial Motor Vehicle Safety Act of 1986. 18 U.S.C. § 2721 (b)(9)
- ☐ Use by an insurer or insurance support organization, in connection with claims investigation activities, antifraud activities, rating or underwriting. 18 U.S.C. § 2721 (b)(6)
- ☐ Use by a licensed private investigative agency, or licensed security service, for a purpose permitted in items 1 through 6 above. 18 U.S.C. § 2721 (b)(8)

___ **I have no DPPA permitted use.**

**SECTION C: TERMS AND CONDITIONS**

**1. RESTRICTED LICENSE.** Seisint hereby grants to Customer a restricted license to use the Accurint Services in accordance with the acceptable use(s) identified by Customer in the Accurint Application and Agreement. The Accurint Application and Agreement has identified industry-specific appropriate uses for which its Accurint Services are to be used, and Customer agrees to state its appropriate use for any requested information prior to accessing it, to limit its use to those stated purposes, and to take appropriate measures so as to protect against the misuse of information provided pursuant to the Accurint Services. Customer also agrees that it shall not access the Accurint Services from Internet Protocol addresses located outside of the United States and its territories without Seisint's prior written approval. Customer shall not use the information provided hereunder for any purpose that would violate the privacy obligation policy and any other terms and provisions of the Gramm-Leach-Bliley Act (15 U.S.C. § 6801 et seq.), the Federal Drivers Privacy Protection Act (18 U.S.C. § 2721 et seq.), or any similar state or local statute, rule, or regulation. Customer shall not use the Accurint Services for marketing purposes nor for any purposes governed by the federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) including the purpose of serving as a factor in establishing a consumer's eligibility for (a) credit or insurance to be used primarily for personal, family, or household purposes; (b) employment purposes; or (c) any other purpose authorized under the Fair Credit Reporting Act. Customer shall abide by such legislation and rules and regulations as may be enacted or adopted after the date hereof. Customer agrees that if Seisint determines or reasonably suspects that Customer is engaging in marketing activities, reselling or brokering the Accurint Services' programs or computer applications, or otherwise violating any of the laws or regulations described in these terms and conditions, Seisint may immediately terminate the delivery of, and the license to use, the Accurint Services. Use of the Accurint Services is expressly conditioned upon acceptance of and agreement to terms 1 through 17 contained herein ("Terms").

**2. PERFORMANCE.** Seisint will use reasonable efforts to deliver the Accurint Services requested by Customer and to compile information gathered from selected public records and other sources used in the provision of the Accurint Services; provided, however, that the Customer accepts all information "AS IS." Customer acknowledges and agrees that Seisint obtains its data from third-party sources, which may or may not be completely thorough and accurate, and that Customer shall not rely on Seisint for the accuracy or completeness of information supplied in using the Accurint Services.

**3. CHARGES.** For each response to a request for information, Customer agrees to pay to Seisint for use of the Accurint Services the applicable charge then prevailing for the information requested. Customer shall pay to Seisint fees in accordance with the prices as updated from time to time through online announcements, customer bulletins, and published price schedules. Seisint is not responsible for ensuring delivery of such updates, changes, additions, or deletions to any of its policies that may occur from time to time, and it is the Customer's responsibility to check the Accurint Service Website and/or publications for such notifications. All current and future Seisint pricing documents are deemed incorporated herein by reference.

**4. INTELLECTUAL PROPERTY.** Customer agrees that Customer shall not reproduce, retransmit, republish, or otherwise transfer for any commercial purposes the Accurint Services' programs or computer applications. Customer acknowledges that Seisint (and/or Seisint's third-party data providers) shall retain all right, title, and interest in and to the data and information provided by the Accurint Services under applicable contractual, copyright, and related laws, and Customer shall use such materials consistent with Seisint's interests and notify Seisint of any threatened or actual infringement of Seisint's rights.

**5. PAYMENT OF FEES.** Customer shall be responsible for payment for all services obtained through Customer's access identification code, whether or not such code is used by Customer or a third party, whether with or without Customer's consent, provided access to Customer's access identification code is not the result of use by a person formerly or presently employed by Accurint or who obtains the code by or through a break-in or unauthorized access of Accurint's offices, premises, records or documents, or computer system. Customer agrees that at all times during the term of this Application and Agreement it shall keep all passwords for use of Accurint Services confidential and shall provide such passwords only to individuals that have a need to know. Customer shall pay Seisint for all charges incurred for the use of the Accurint Services on a monthly basis, and Customer agrees to be electronically invoiced for those charges. At Customer's request, paper invoices can be mailed via the United States Postal Service at a cost of Ten Dollars ($10) per month, which will be included in Customer's monthly invoice as an additional itemized charge. All payments are due within 20 days of the date of an invoice for the Accurint Services. Customer understands that it will be notified via electronic mail regarding all unpaid balances due. Customer shall pay interest at the rate of eighteen percent (18%) per annum from the date due on any charges not paid by the payment due date. All remittances shall be sent to Seisint, Inc., 6601 Park of Commerce Boulevard, Boca Raton, Florida, 33487. Seisint reserves the right to terminate this Application and Agreement and the right of Customer to use any information provided hereunder with prior notice to Customer upon any non-payment of fees by the date due.

**6. TERM OF AGREEMENT.** This Application and Agreement is for services rendered and shall be in full force and effect during such periods of time during which Seisint is providing services for Customer. Customer agrees that if it is found to be in violation of any specifications of this Application and Agreement, Seisint has the right to immediately terminate Customer's access to the Accurint Services.

**7. GOVERNING LAW.** The Terms and Conditions of Customer's use of the Accurint Services shall be governed by and construed in accordance with the laws of the State of Florida, without effect to conflict of law principles. Additionally, any action brought pursuant to Customer's use of the Accurint Services or pursuant to the terms and conditions of this Application and Agreement shall be brought within the jurisdiction of the courts of Palm Beach County, Florida.


________(Initial)

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

**8. ASSIGNMENT.** The license granted pursuant to this Application and Agreement to Customer to use the Accurint Services may not be assigned by Customer, in whole or in part, without the prior written consent of Accurint. For purposes of this Application and Agreement, a change in control of Customer of twenty percent (20%) or more shall constitute an assignment.

**9. WARRANTIES/LIMITATION OF LIABILITY.** Neither Seisint nor any third party data provider (for purposes of indemnification, warranties, and limitations on liability, Seisint and its data providers are hereby collectively referred to as "Seisint") shall be liable to Customer (or to any person claiming through Customer to whom Customer may have provided Accurint service-related data) for any loss or injury arising out of or caused in whole or in part by Seisint's acts or omissions in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the Accurint Services. If, notwithstanding the foregoing, liability can be imposed on Seisint, then Customer agrees that Seisint's aggregate liability for any and all losses or injuries arising out of any act or omission of Seisint in connection with anything to be done or furnished under this Application and Agreement, regardless of the cause of the loss or injury, and regardless of the nature of the legal or equitable right claimed to have been violated, shall never exceed $100.00; provided, however, that such limitation of liability shall not apply to Seisint's indemnification obligation detailed in Section 10 hereof; and Customer covenants and promises that it will not sue Seisint for an amount greater than such sum even if Seisint and/or third parties were advised of the possibility of such damages and that it will not seek punitive damages in any suit against Seisint. Seisint does not make and hereby disclaims any warranty, express or implied, with respect to the Accurint Services provided hereunder; provided, however, that Seisint does hereby warrant that Seisint has complied with the law, and applicable third-party data provider contracts in providing the Accurint Services. Seisint does not guarantee or warrant the correctness, completeness, merchantability, or fitness for a particular purpose of the Accurint Services or the components thereof or information provided hereunder. In no event shall Seisint be liable for any indirect, incidental, or consequential damages, however arising, incurred by Customer from receipt or use of information delivered hereunder or the unavailability thereof.

**10. INDEMNIFICATION.** Customer hereby agrees to protect, indemnify, defend, and hold harmless Seisint from and against any and all costs, claims, demands, damages, losses, and liabilities (including attorneys' fees and costs) arising from or in any way related to use of information received by Customer (or any third party receiving such information from or through Customer) furnished by or through Seisint. Seisint hereby agrees to protect, indemnify, defend, and hold harmless Customer from and against any and all costs, claims, demands, damages, losses, and liabilities (including attorneys' fees and costs) arising from or in any way related to a breach by Seisint of the warranty made by Seisint regarding authorized provision of the data in Section 9 hereof.

**11. SURVIVAL OF AGREEMENT.** Provisions hereof related to release of claims, indemnification, use of information and data, payment for Accurint Services and disclaimer of warranties shall survive any termination of the license to use the Accurint Services.

**12. AUDIT.** Customer understands and agrees that in order to ensure compliance with the GLB, the DPPA, and other similar laws, Seisint will conduct periodic reviews of Customer activity and may, on a random basis, contact Customer to provide documentation of executed searches. Seisint shall also investigate all legitimate reports of abuse or misuse of Accurint Services by Customer or others. Customer agrees to cooperate fully with any and all investigations. Violations discovered in any review by Seisint will be subject to immediate action including, but not limited to, suspension or termination of the license to use Accurint Services, reactivation fees, legal action, and/or referral to federal or state regulatory agencies.

**13. ATTORNEYS FEES.** The prevailing party in any action, claim or law suit brought pursuant to this Application and Agreement is entitled to payment of all attorney fees and costs expended by such prevailing party in association with such action, claim or law suit.

**14. CUSTOMER CHANGE.** Customer shall notify Seisint immediately of any changes to the information on Customer's Application for Accurint Services. Seisint reserves the right to terminate Customer's access to the Accurint Services or terminate license to use the Accurint Services without further notice upon receipt of any change in Customer's status which in Seisint's sole discretion would cause Customer to be unable to comply with its obligations under this Application and Agreement.

**15. RELATIONSHIP OF PARTIES.** Customer shall at no time represent that it is the authorized agent or representative of Seisint.

**16. CHANGE IN AGREEMENT.** By receipt of the Accurint Services, Customer agrees to, and shall comply with, changes to the Restricted License (Part 5, Section C, ¶ 1) and changes in pricing as Seisint shall make from time to time by notice to Customer via e-mail, online click wrap amendments, facsimile, mail, or other written notification. All e-mail notifications shall be sent to the individual named in the Account Contact Information section (Part 1, Section B), unless stated otherwise in this Application and Agreement.

**17. ENTIRE AGREEMENT.** This Agreement constitutes the final written agreement and understanding of the parties and is intended as a complete and exclusive statement of the terms of the agreement, which shall supersede all prior representations, agreements, and understandings, whether oral or written. Any new, other, or different terms supplied by the Customer beyond the Terms contained herein, including those contained in purchase orders or confirmations issued by the Customer, are specifically and expressly rejected by Seisint unless Seisint agrees to them in a signed writing specifically including those new, other, or different terms. The Terms contained herein shall supersede and govern in the event of a conflict between these Terms and any new, other, or different terms in any contract which this Agreement is referenced or made a part of. In the event any one or more provisions of this Agreement or of any exhibit is held to be invalid or otherwise unenforceable, the enforceability of the remaining provisions shall be unimpaired.

## AUTHORIZATION AND ACCEPTANCE OF TERMS

**I HEREBY CERTIFY** that I am authorized to execute this Application and Agreement on behalf of the Applicant listed above and that the statements I have provided in this Application and Agreement are true and correct. Further, I hereby certify that the Applicant agrees to the terms and conditions set forth in this Application and Agreement.

## NATURE OF APPLICATION AND AGREEMENT (YOU MUST CHECK ONE)

☐ **Free Trial Application Only** (If you check this box, additional information or documentation will be required prior to becoming an active Accurint customer.)

☒ **Free Trial and Billing Application** (If you check this box, upon the expiration of your Free Trial, your account will be converted into an active Accurint account for billing purposes without supplying additional documentation, provided all needed documentation has been approved.)

**APPLICANT**

Signature [signature]

Print Name Daniélle Meyers

Title Director of Operations

Dated 10/15/04 (mm/dd/yyyy)



This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 5 – EXHIBIT 3

GALL & GALL
COMPANY, INC.
*THE INFORMATION SOURCE™*

4/5/2006

Christine M. Varad
PO Box 586
Milton, MA 02186

In re: F+W Publishing applicant screening report

Ms. Varad,

This letter should answer your request for information on the screening report requested by F+W Publishing through our company. We have updated, per your request, the Address Source Manager information on our records and we have sent a corrected copy to F+W Publishing as well as your copy, which is enclosed in this correspondence.

Address Source Manager is provided by ACCURINT, a division of Lexis Nexus, PO Box 538358, Atlanta, Georgia 30353. Toll Free Phone (888) 332-8244.

I am also enclosing a copy of an email sent to me, by you, in reference to a book you are writing. Should you have further questions or concerns, please call me.

Steven E. Gall / President
Gall & Gall Company, Inc
8555 N. Dixie Drive
Dayton Ohio 45414-2463
Phone: 937-264-4900 ext. 223 or 1-800-759-4255 ext. 223
Fax: 937-264-4909 or 1-800-765-7393

enclosure: report & email

DEFENDANT'S EXHIBIT 3
5-31-07 SMM
PENGAD 800-631-6989

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD,<br><br>Plaintiff,<br>v.<br><br>REED ELSEVIER INCORPORATED,<br>d/b/a LexisNexis, Lexis Nexis Risk & Information<br>Analytics Group, Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06 CA 11370 MLW |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 5 – EXHIBIT 4

**APPLICANT SCREENING REPORT**

GALL & GALL COMPANY, INC.

8555 N DIXIE DR * DAYTON, OH 45414
PHONE 937-264-4900 * 800-759-4255
FAX 937-264-4909 * 800-765-7393

| | | | | |
|---|---|---|---|---|
| FILE # | 75270 / ES1165 | REPORT DATE | 04/05/2006 | AMANDA MEYERS |
| REPORT TO | F&W PUBLICATIONS ES1165 | DATE ORDERED | 02/01/2006 | AMY BREWER |
| STREET | 4700 E GALBRATH | REPOSITORIES | | |
| CITY/ST/ZIP | CINCINNATI, OH 45236 | TYPE | F&W PUBLICATIONS | |

## APPLICANT INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| APPLICANT | VARAD, CHRISTINE M | SOC SEC | 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 | DOB | 04/30/1955 |
| ADDRESS | 88 GREENFIELD LN | CITY/ST/ZIP | SCITATE, MA 02066 | | |

## INVESTIGATIVE

### COUNTY CRIMINAL RECORDS SEARCH

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | VARAD, CHRISTINE M |
| DOB(S) SEARCHED | 04/30/1955 |
| JURISDICTION(S) | MA-PLYMOUTH |

CAUTION: Based On The Information Provided We Searched The Above Mentioned Jurisdiction(s) For Criminal Convictions For No Less Than Ten Years Unless Specified And Found No Individual By This Identification. This Means That No One By This Identification Has Been Found As Convicted Of A Criminal Charge In These Jurisdiction (s). Further Investigation Into Additional Jurisdictions May Be Warranted. Please Call For Assistance.

---

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | VARAD, CHRISTINE M |
| DOB(S) SEARCHED | 04/30/1955 |
| JURISDICTION(S) | MA-NORFOLK |

CAUTION: Based On The Information Provided We Searched The Above Mentioned Jurisdiction(s) For Criminal Convictions For No Less Than Ten Years Unless Specified And Found No Individual By This Identification. This Means That No One By This Identification Has Been Found As Convicted Of A Criminal Charge In These Jurisdiction (s). Further Investigation Into Additional Jurisdictions May Be Warranted. Please Call For Assistance.

### INSTACRIMINAL NATIONAL (MULTISTATE) SEARCH

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | CHRISTINE VARAD |

DEFENDANT'S EXHIBIT 4 5-31-07 Smm

| | |
|---|---|
| DOB SEARCHED | 04/30/1955 |
| JURISDICTION(S) SEARCHED | AK AOC,AK Sex Offender,AL DOC,AL Sex Offender,AR AOC,AR DOC,AR Sex Offender,AZ Maricopa Superior Archive,AZ Maricopa Felony,AZ Maricopa Misdemeanor,AZ AOC,AZ Mohave,AZ DOC,AZ Maricopa Superior,CA Orange,CA Riverside,CA Santa Clara,CA San Bernardino,CA Santa Cruz,CA Fresno,CA Indio,CA Santa Clara Municipal,CA Sex Offender,CO Archived Sex Offender,CO Sex Offender,CT Judicial Information System,CT DOC,CT Traffic,CT Sex Offender,CT Out of State Sex Offender,DC DOC,DC Sex Offender,DE Sex Offender,FL Pinellas,FL DOC,FL AOC,FL Osceola,FL Miami Dade,FL Brevard,FL Charlotte,FL Orange,FL Bay,FL Duval,FL Hillsborough,FL Palm Beach,FL Hernando,FL Indian River,FL Lee,FL Pasco,FL Suwannee,FL Monroe,FL Highlands,FL Alachua,FL Broward,FL Sex Offender,GA Decatur Arrest Records,IA DOC,IA AOC,IA Sex Offender,ID DOC,ID Sex Offender,IL DOC,IL Cook,IL Sangamon,IL Peoria,IL Sex Offender,KS DOC, Archive,KS Sex Offender,KY DOC,KY Lexington Fayette,KY Sex Offender,MD DOC,ME DOC,ME Sex Offender,MI DOC,MI OTIS,MI Wayne,MI Sex Offender,MN DOC,MN DPS,MN Sex Offender,MO DOC,MO Cape Girard Sex Offender,MO Cole Sex Offender,MO Barton Sex Offender,MO Jefferson Sex Offender,MO Newton Sex Offender,MO Laclede Sex Offender,MO St Louis Sex Offender,MS Hinds,MS DOC,MS Sex Offender,MT DOC,NC AOC,NC Archived DOC,NC DOC,NC Sex Offender,NC Sex Offender,ND AOC,ND Sex Offender,ND Sex Offender,NE DOC,NE Sex Offender,NH Sex Offender,NJ AOC,NJ DOC,NJ Archive DOC,NJ Sex Offender,NM DOC,NM Sex Offender,NV Archive DOC,NY DOC,NY Sex Offender,AppAlert Federal Criminal Data,AppAlert OFAC,OH Portage,OH Greene,OH DOC,OH Sex Offender,OK DOC,OK AOC,OR DOC,OR AOC,PA DOC,Proprietary Offender Data,RI Sex Offender,SC DOC,SC Sex Offender,SD Sex Offender,SD Aberdeen Sex Offender,SD Sioux Falls Sex Offender,TN Davidson Sheriff,TN Sex Offender,TX Bexar Felony,TX Bexar Misdemeanor,TX Travis Misdemeanor,TX Travis Felony,TX Montgomery,TX Potter Misdemeanor,TX Potter Felony,TX Denton,TX El Paso,TX Harris Felonies,TX Harris Misdemeanor,TX Dallas,TX Gregg,TX Jefferson,TX Victoria,TX Dept of Public Safety,TX Sex Offender,UT DOC,UT AOC,UT Sex Offender,VA Circuit,VA General District,VA Fairfax,VA Traffic,VT Sex Offender,WA DOC,WA Courts of Ltd Jurisdiction,WA AOC SCOMIS,WI DOC,WI AOC,WV Sex Offender,WY Sex Offender |

CAUTION: Based On The Information Provided We Searched Our Database For The Above Mentioned Jurisdiction(s) For Criminal Convictions And Found No Individual By This Identification. This Means That No One By This Identification Is Within Our Database As Convicted Of A Criminal Charge For These Jurisdiction(s). Therefore It Cannot Be Confirmed That The Applicant Has Not Ever Been Convicted Of A Criminal Charge. Further Investigation May Be Warranted. Call For Assistance!

## SOCIAL SECURITY SEARCH

### SOCIAL SECURITY SEARCH [# 092590]

Record # 01

| | |
|---|---|
| Name | CHRISTINE M VARAD |
| SSN | 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 |
| Address | 88 GREENFIELD LN , SCITUATE, MA 02066 08/01/1993 |
| HAWK | REQUESTED PRODUCT DELIVERED |

SSN issued from 1966 to 1968; State: MA (input)
SSN issued from 1966 to 1968; State: MA (file)
INPUT SSN ISSUED: 1966 - 1968; STATE: MA
FILE SSN ISSUED: 1966 - 1968; STATE: MA

## REFERRAL

Reporting Bureau(s) Trans Union
P.O. Box 1000
Chester, PA 19022
800-888-4213

## DISCLOSURE

The Information Contained In This Social Security Reports Section Should Only Be Used As A Tool To Further Research And Verifications. Please Call For Assistance.

## REPOSITORIES

### ADDRESS SOURCE MANAGER

RESULTS RECORDS FOUND
SSN SEARCHED 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

| FULL NAME / SSN | AGE / DOB | ADDRESS | DATES | PHONE INFORMATION |
|---|---|---|---|---|
| CHRISTINE M VARAD 013-42-xxxx | 50 Apr 30, 1955 | 88 GREENFIELD LN SCITUATE, MA 02066 | Jun 89 - Aug 05 | (781) 545-0707 |

Social Security Number 013-42-xxxx
Location Massachusetts
Dates Issued Jan 01, 1966 - Dec 31, 1968

WARNING: This search may not be used as the basis for an adverse action on an applicant. It should only be used to verify or correct an applicant's information, or as a tool to further research of public records or other verifications.

## DISCLAIMER

Information Contained Here In Meets All The Guidelines Set Forth By The Fair Credit Reporting Act. This Is Confidential Information And Not To Be Divulged Except As Required By Public P=Law P=91-508, 93-579, 94-239. This Report Is Furnished In Response To An Inquiry For The Purpose Of Determining The Propriety Of Dealing With The Consumer. It Is Based Upon Information Obtained In Good Faith From Sources Deemed Reliable.

*** END OF REPORT ***

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTINE VARAD, )
) C.A. No. 06 CA 11370 MLW
Plaintiff, )
v. )
)
REED ELSEVIER INCORPORATED, )
d/b/a LexisNexis, Lexis Nexis Risk & Information )
Analytics Group, Inc., )
)
Defendant. )

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 5 – EXHIBIT 5

**Steven Gall**

**From:** christine11.1@juno.com
**Sent:** Thursday, February 02, 2006 12:20 PM
**To:** Steven Gall
**Subject:** background check book research

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Dear Mr. Gall,
I am currently working on a book that I hope will demystify background checks for the general public. I was hoping to get a chance to chat with you about background check computer data central registries primarily on the state level. For example the difference of access to public records v. confidentially held records and police access v. civil rights or FOI Act requests for access. Well, if you have a free moment and would be willing to give me a few research points of reference I would be very grateful. The public is better protected by knowledge of truths retained in the light of day as opposed to fears of false or misleading information held in shrouded darkness of secrecy.
Thank you,
Christine Varad



PENGAD 800-631-6989 DEFENDANT'S EXHIBIT 5 5-31-07 SMM