UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7

Dockets.Justia.com

Volume 1, Pages 1-175

Exhibits: 1-14

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------

CHRISTINE VARAD,

Plaintiff,

v. Docket No. 06 CA 11370 MLW

REED ELSEVIER INCORPORATED, d/b/a

LEXIS NEXIS CORPORATION, LEXIS

NEXIS ACCURINT,

Defendants.

---------------------------

DEPOSITION OF CHRISTINE M. VARAD

Wednesday, April 18, 2007, 10:07 a.m.

Donnelly, Conroy & Gelhaar, LLP

One Beacon Street, 33rd Floor

Boston, Massachusetts

---- Reporter: Patricia A. Bucko, RMR ----

www.fabreporters.com | Farmer Arsenault Brock LLC

50 Congress Street, Suite 415

Boston, Massachusetts 02109

617.728.4404 fax 617.728.4403

APPEARANCES:

Christine M. Varad
P.O. Box 583
Milton, Massachusetts 02186
Pro se

Donnelly, Conroy & Gelhaar, LLP
Kristin M. Cataldo, Esq.
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
617.720.2880 Fax: 617.720.3554
kmc@dcglaw.com
for Defendant



PROCEEDINGS

CHRISTINE M. VARAD, sworn

MS. CATALDO: Good morning, Miss Varad.
EXAMINATION
BY MS. CATALDO:
Q. Could you please state your full name for the record.
A. Christine M. Varad.
Q. And as you know, I am Kristin Cataldo. I represent the Defendant in this matter.
And before we begin the deposition, I just wanted to go over some deposition basics, and the first is that you are representing yourself today; you are here pro se; is that correct?
A. I am here pro se. I tried to get representation, but I couldn't get any.
Q. And you are choosing to go forward pro se today?
A. Yes. What choice do I have?
Q. If I ask a question that you don't understand, please let me know, and that's because if you don't let me know, I'm going to assume that



you understand the question; is that fair?
A. If you ask a question I don't understand, I'm going to object to it as compound, ambiguous, misleading, and that's what my reaction will be.
Q. Oh, I guess what I'm asking you to do, though, is to ask --
A. I let you know if I don't understand it, by objecting to it, yes.
Q. And just so the court reporter could take down an accurate transcript, we need to speak one at a time and you need to give verbal answers; you understand that?
A. Uh-huh, yes.
Q. And is there any reason why you can not testify truthfully and completely today?
A. I'm not aware of any such reason.
Q. What is your current address?
A. My mailing address?
Q. We can --
A. P.O. Box 583, Milton, Massachusetts, 02186.
Q. And what is your residential address?
A. 88 Greenfield Lane, in Scituate, S-c-i-t-u-a-t-e, Massachusetts.
Q. The zip code?



A. 02066.
Q. And how long have you lived at the Greenfield Lane address?
A. That sounds like a difficult question, for the reason that when I got married, before I got married, I was living at 3 Pleasant Street in Burlington and intermittently after that. My marriage broke up, so it's kind of a difficult question to answer. I'm going to go from, let's say, 1992, -- I wouldn't say that.
Let's say from 1995 to present is absolutely, that was my residential address. But before that was intermittently with the 3 Pleasant Street, Burlington, within the state of matrimony and non-matrimony.
Q. Okay.
So from 1995 through today, you have resided at 88 Greenfield Lane continuously, correct?
A. Yes.
Q. And before 1995, you resided at 88 Greenfield Lane, intermittently?
A. Well, at points I was living at 3 Pleasant Street, Burlington, and not living there. But since it's -- it was my mother's house, it was my mother's

home, okay, and she constantly kept that address, I was, you know.
It was an address I used almost simultaneously with the 3 Pleasant Street, at points.
Q. Well, you said it is your mother's home, the 88 Greenfield Lane. Is your mother still alive?
A. Yes.
Q. And was that the house you grew up in?
A. No.
Q. When did your mother first move to the 88 Greenfield Lane?
A. 19 --
Q. Approximately.
A. 1978.
Q. And did you move with her in 1978, to that address?
A. Basically, no. I lived in Stockbridge, Massachusetts for a while at Stone Court; I think it was 3 Stone court, Stockbridge, Stone Court.
Q. Okay.
At what point in time did you move to 88 Greenfield Lane, prior to 1995?
A. I don't remember.



Q. Is it in the '80's; do you recall?
A. I just don't remember, and I don't want to give sworn testimony to something I don't really remember.
Q. Understood.
You said for a period of time you lived at 3 Pleasant Street in Burlington, Mass., correct?
A. Correct.
Q. And that was when you were married?
A. And before I was married.
Q. Okay.
A. Well, before I was married.
Q. When did you first move to the Pleasant Street address?
A. Let's see. I was married in -- I don't remember the exact date, but it would have been at least in '86, 1986, at some point in '86, at least. I don't remember the exact date.
Q. When did you get married?
A. June 12th, 1988.
Q. And when were you married until?
A. I believe it was 1992.
Q. And who is your husband?
A. Rajan, R-a-j-a-n, Varad, V-a-r-a-d.



Q. And you lived with Rajan Varad in Burlington, from, during the entire time you were married; is that correct?
A. And before. We, we lived together for longer, much longer. Somewhere around 1986. Let's say April 4th, 1986. It's just a date that seems to stand out for me, but I won't try to give you an exact date of when I moved in with him.
Q. Understood that you wouldn't remember that exact date.
The residence that you lived at in Burlington, was that a home that you owned?
A. He owned.
Q. And is that why when you said you still intermittently used the 88 Greenfield Lane address throughout the marriage, is that why you would still use that address even though you were living in Burlington?
A. Partly it was just being too lazy to take any action to update my license and things like that. I just, I don't think I -- Rajan had, Rajan paid all the bills, and I didn't really have any occasion to address that problem, except on the license. But it hadn't expired to a point where I



needed to go down -- I should have, I realize, but I didn't, and he took care of all the bills.
Q. So your license was never changed to reflect the 3 Burlington address, excuse me, the 3 Pleasant Street?
A. My driver's license, no, I don't believe so, no. Maybe it was. I don't want to say that. Maybe it was. I do remember going down to the Registry.
Okay. I'm not sure about that. It could have been -- because I do remember going down to the Registry. I think that was about a new car. It was a long time ago.
Q. Okay. So you're just not sure whether or not you ever changed your license?
A. I'm not sure.
Q. And prior to living with your husband in Burlington in 1986, were you residing at the 88 Greenfield Lane address in Scituate?
A. Yes.
Q. And do you recall for how long prior to 1986 you lived in Scituate?
A. No. It's going back a while, at this point.

Q. What is your maiden name?
A. Mooney, M-o-o-n-e-y.
Q. And have you ever gone by any other name other than Christine Mooney or Christine Varad?
A. No.
Q. And what is your Social Security number?
A. 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.
Q. Beginning with high school, can you describe your education background for me?
A. Well, I was very severely injured in high school, and I broke my arm and I had to go through a whole bunch of surgeries, and I spent at least a year in and out of the hospital, so I actually was tutored. And then in conjunction with all of that, I actually graduated, I graduated a year early because I fulfilled the requirements. But I think it goes down as graduating from Framingham North, Framingham North High School, in 1973. But I wasn't, I wasn't actually at the high school, because I had technically graduated early, and I was pretty much taking courses at the Cordova Museum School in Lincoln.
Q. So in 1973, you graduated from Framingham North, correct?



A. I think that's what the record would show. I think it was actually '72, but I'll go with '73.
Q. Okay. So approximately 1973?
A. Yes.
Q. And after Framingham North High School, did you attend college?
A. Mass. College of Art.
Q. And what year did you enroll in Mass. College of Art?
A. '73.
Q. And did you complete your studies at Mass. College of Art?
A. My father died in '75, and it was a struggle, so I took some time off. Then I got a job at Shawmut Bank of Boston on Federal Street and I finished up at night. I would go to work all day and then go to school at night; and that program ended in 1980.
Q. Okay. When you said you finished up in 1980, did you graduate from Mass. College of Art in 1980?
A. Yes, yes, yes.
Q. And what was your degree in?
A. Graphic design, Bachelor of Fine Arts.



Q. And other than working at Shawmut Bank, were you employed anywhere else between 1973 and the time you graduated in 1980?
A. I don't remember.
Q. You said that you took some time off and then began working at Shawmut Bank and attending classes at night, correct?
A. Uh-huh.
Q. Did you finish, were all of the classes after that point in time, night classes?
A. I don't remember. Probably.
Q. After you graduated from Mass. College of Art in 1980, did you have any further education?
A. Paralegal certificate from Suffolk University, 1997.
Q. And how long was that course of study?
A. I think it was like a year or something; I don't recall.
Q. And after you obtained your paralegal --
A. I had my own business, and there is a big gap here where I had my own business. It was called Varacolors.
Q. What was it called?
A. Varacolors, V-a-r-a-c-o-l-o-r-s. And I was



designing textiles for apparel and home furnishings, but I worked with people in New York City. And I was a member of the Industry Foundation with the ASID. And I'm affiliated with the Design Center here in Boston. So that's -- you know, my life didn't resolve around a paralegal certificate.
Q. Right, I know.
A. It was all about designing textiles. My clients mostly were in New York City, you know.
Q. Okay. I am going to finish up with the education and then actually we are going to move to the employment.
But between 1980 and 19 -- the time you finished your paralegal certificate in 1997, there were no other courses of study that you took, correct?
A. Formally from a school, I don't believe so. I don't recall right now. I'm constantly studying things, so I wouldn't say that. But from a school, I don't believe so.
Q. Any further education after you obtained your paralegal certificate from Suffolk University in 1997?
A. Well, in 1998 I entered New England School

14

of Law and three years later, 2001, I received a juris doctor degree in law.
Q. Have you sat for the bar exam in any state?
A. Yes, Massachusetts and Maine.
Q. And when did you take the bar exam in Massachusetts?
A. July 2001 and February 2002.
Q. Any other times that you sat for the bar exam in Massachusetts?
I don't believe so. I don't think -- I believe that was it.
Q. And when did you take the bar exam in Maine?
A. Last February.
Q. Last February, 2006?
A. 7.
Q. So this past February?
A. Uh-huh.
And I think it was July of 2005.
Q. Any other times where you've taken a bar exam in any jurisdiction?
A. No.
Q. And did you pass the bar exam that you took in Massachusetts in July of 2001?

15

A. No.
Q. And did you past the bar exam that you took in Massachusetts in February of 2002?
A. No.
Q. And did you pass the bar exam that you took in Maine in July of 2005?
A. No.
Q. And I take it that you haven't received your results, yet, from the February 2007 exam; is that correct?
A. Right.
Q. Do you know when you will receive those results?
A. No.
Q. So you're not licensed to practice as an attorney in any jurisdiction; is that correct?
A. That is correct.
Q. Okay. Well, why don't we switch now to the employment side. So beginning with high school, can you describe for me your employment background?
A. Well, I was working at Sears Roebuck when my foot got stuck in a bunch of candy. I was selling candy at this -- they had this, this kind of like island where they sold open candy. Kind of

16

like a bakery only it was candy. It was all over the floor from people dropping it. And I fell, and I smashed my arm to smithereens in that fall. And it was a very difficult thing to put it back together, because it was very badly smashed.
And they -- the surgeon who tried to put the one arm that was very badly smashed, he put in a plate with four screws, only he didn't know what he was doing and the screws cut off the blood circulation to the bone, and as you know, that's pivotally important to the oxygen of the bone, to, for gangrene and so forth, not to set in.
Well, an infection did set in, and I was really, at that point, at risk of losing my arm. And I had to be hospitalized while they got the -- there was just an out-of-control infection, and they had -- I was on IV therapy antibiotics every day in the hospital until they could get it under control.
And then they had to remove the dead bone, and they were hoping that the bone would grow back, and everything else. And they said, you know, "Your arm is like glass. You're not working anywhere." And, also, the antibiotics did a job on my immune system, so I had no, at that point in time

17

I had a very compromised immune system. I got stung by a bee and had a really extreme reaction from it.
So I had a long, prolonged healing process in front of me, and so all I really did was art, artwork, artwork, artwork, which was something I was into anyway. So employment was not in the immediate future for me.
Q. And was this when you referred earlier to a period of time where you were tutored at home, because of an accident?
A. Yes, yes, yes.
Q. Is this the accident you are referring to?
A. Yes.
Q. Okay.
A. So I, I didn't have a whole lot of jobs. I just -- my job was to get better, and I did make it into Mass. College of Art, and so I went to college. And just, you know, carrying art supplies was a struggle, but that's -- the thing was to get the degree. And my parents didn't, you know, require me, at that point, to -- I was very, very, thin. You know, I didn't weigh much, you know, so I just went to college, and that was -- in the meantime my father was diagnosed with cancer, and he

34

I had no, no extended interchange with them. I knew they were there, but most of my interchange was with Richard Wallace, and he was the author.
Q. Do you know whether or not Mr. Wallace was an employee of F+W?
A. Yep, he's an employee.
Q. And did you complete the task of editing his book called The Job Bank?
A. He -- no.
We completed the task that he gave us, but I don't -- I'm under the impression that the editing was not completed by us, it was -- he completed it himself as far as I know.
Q. But you completed the task that you were hired to do; is that correct?
A. Yes.
Q. And do you recall how long you worked as a temporary employee at F+W?
A. No, I don't.
Q. Do you recall if it was more than a month?
A. It was more than a month.
Q. If I told you it was from approximately February 6th, 2006 through April 28th, 2006, does that sound correct?

35

A. Pretty much.
Q. And when you worked as a temporary employee at F+W, where was your office located?
A. They had a bunch of like cubicles kind of thing, and each cubicle had a computer and a phone and a desk and stuff in it. And so I worked at one cubicle with this other employee who was an older woman, behind me, and a man who was into licensing besides her.
I don't recall the names. The other two temps were not -- that's what I mean, they were not even in where I was.
They were, but in a, in a bank away. They were a whole bank away doing what they were doing.
Q. You worked in their Avon location?
A. Uh-huh.
Q. And when I refer to F+W, just so the record is clear, I'm referring to F+W Publishing comma Adams Media?
A. Media.
Q. Okay. Who was your supervisor at F+W Publishing?
A. Richard Wallace.

36

Q. Did you report to anybody else?
A. Nope.
Q. Did you meet with anyone from F+W, prior to beginning your temporary employment?
A. Yes, I met with someone, I don't recall her name, but she was the -- I don't know what you'd call that, the, you know, the personnel employment person. I don't recall her name.
She was the one that gave me the background check information in Avon, but I did have to contact F+W, the main office, more than once, and I did talk to individuals at the main F+W office, so.... they didn't have anything to do with my employment, per se, that was Richard Wallace. But these other individuals had to do with the personnel issues, i.e. the application and the background check. And when I requested a copy, I requested it not of Richard Wallace, but of this individual in the employment personnel office.
He was, Richard Wallace was not involved in --
Q. Okay. And you've referred to several individuals at F+W.
A. Yes.

37

Q. That you had conversations with concerning your background check report, correct?
A. Yes.
Q. And one of those individuals, or at least one of those individuals, was in the Avon location?
A. Yes.
Q. And you don't recall her name?
A. No, but it's probably in the discovery that I gave you. There were e-mails, and conversations with these individuals are in the e-mails, but that was to the -- I think that was to the main office. But she was the one that was directing who I would request that information from, and the -- in the main office, and so forth.
She is probably still there, employed there in personnel. She's their main personnel person.
MS. CATALDO: Could we mark this, please.
(Marked, Exhibit 1, letter dated 2/1/06.)
Q. I'm placing before you what's been marked as Exhibit 1.
A. Uh-huh.

114

A. Richard Wallace and a woman in personnel.
Q. And was that before or after you requested the Gall & Gall report?
A. Both.
Q. And what did Richard Wallace say to you regarding the South Dakota address?
A. I couldn't quote him specifically, but he was, he mentioned the, that I had lived in Sioux City, South Dakota, and I said, "No, I have not. Why?" And the woman in personnel was suggesting that I may have forgotten to include it.
I mean, I'm not trying to quote either of them specifically, but that was their basic, my understanding of what they were communicating to me.
Q. Do you recall anything else from those conversations?
A. Not specifically, not verbatim.
Q. Your application for employment with F+W only asked for address history for the prior ten years, correct?
A. That's what it asks for.
Q. Okay. And you provided that information?
A. As I told you before, at that point in time I was very sensitive about the issue, because like

115

the issue with my graduating from Mass. College of Art, I was under the impression that somebody, somewhere, was disseminating false address information in connection with me, although I had not, at that point, been able to prove it, and I was very tentative as to what I was going to put down.
Q. And my question to you is whether or not the address that you listed on your application under the residential history section, is accurate for the last ten years, from the date of this application that we've marked as Exhibit 2?
A. I guess within the last ten years, because I was -- I don't know whether the Burlington address should have been included, but I guess not. It seems to me accurate.
Q. The Greenfield Lane address was accurate?
A. Yes. I, I'm going back from 2006 to 1996, so that would not have included the Burlington address, so I guess it was accurate.
Q. And there is nothing on this application, then, that contradicts your -- strike that.
Did you have any conversations with anyone other than Mr. Wallace and the personnel woman in Avon, regarding the South Dakota address?

116

A. Well, I think I had conversations with Amy Brewer, the other woman that's mentioned in those notes, the personnel woman, Richard Wallace, other employees that work there.
Q. What other employees?
A. I wouldn't remember their names now, but it's just, you know, people could hear us talking about it, and you really -- there was no place in that office where you could have privately spoke about it.
I had to make phone calls to Cincinnati from my desk and you could hear it, and people talked to me about it.
Q. What did these people say to you?
A. Well, as I said before, the -- what went from being a very friendly atmosphere went to being not friendly and not conducive to my staying there, or being continued to be employed there.
Q. Well, well, you weren't fired from F+W, correct?
A. No.
Q. And you worked out your temporary position that you were hired for?
A. Yes. I think it could have been a longer

117

employment, but it wasn't, based on what happened.
Q. But my question was, you did complete the temporary position that you were employed for?
A. Well, as I say, I mean, I completed the temporary position, but I think that there were, there was a possibility that I might have been more permanently employed there, but that possibility was gone.
Q. Did you fill out an application for any other job position at F+W?
A. At that point that was not something that was on the table for me.
Q. And how do you know that?
A. Because the atmosphere had turned very bad. It was very obvious. I was very uncomfortable there; the whole incident had upset me very much.
Q. So there wasn't any further position that you applied for at F+W?
A. I didn't feel that after what happened, that that was something that was advisable to do, no.
Q. Okay. But you didn't do it?
A. I didn't feel it was advisable at that point anymore, because of what had happened.

138

A. I see that.
Q. Did you have any reason to believe that F+W did not receive the corrected report?
A. Nor do I have any reason to believe that they did. I just simply don't have any knowledge as to what F+W did or did not receive. I just would have no idea what they received.
Q. Well, did you ever ask?
A. I think I've made it clear that F+W Publishing did not want to get involved in this. They had directed me to Steven Gall, and I was communicating with Steven Gall. I have no idea if Steven Gall sent F+W anything.
Q. Well, F+W didn't take any action against you regarding the information that was contained in Gall & Gall, in the Gall & Gall report, did they?
A. They didn't take any action against me for the sole reason that I asked for that report, and I actively contested its contents, and I actively went after finding out who provided that information. The damage was already done.
Q. And what damage was that?
A. They had defamed me; they had produced false information that my employer took to be

139

correct; made it look like I was lying on my application.
Q. I am going to ask you to look at Exhibit 6 again.
A. (Witness complies.)
Q. It's an e-mail chain between you and Miss Brewer.
A. Uh-huh.
Q. And if we look at the middle of the first page of Exhibit 6, there is an e-mail from Amy Brewer to you on March 15th, 2006.
Do you see that, on the first page?
A. Where?
Q. In the middle of the first page.
A. Which one?
Q. March 15th, 2006, of, at 2:45 p.m.; do you see that?
A. Yes.
Q. And in this e-mail Miss Brewer is stating that it's typical sometimes that information on these types of reports is not always correct when a check is run on your name, and that the addresses that you questioned did not show up on the Social Security portion; do you see that?

140

A. Uh-huh.
Q. And Miss Brewer also states that "From my understanding, if there is nothing that has shown up on your credit report, there is nothing that will be of harm to you or your background." Do you see that?
A. Uh-huh.
Q. So in this e-mail Miss Brewer is stating that she doesn't see any harm that has been inflicted upon you regarding this background check.
A. Miss Brewer is attempting to defend F+W Publishing, at that point in time. As I say, the whole, the whole atmosphere of working there had changed.
Q. Well, did you work with Miss Brewer?
A. They are in constant contact with each other.
Q. My question was, did you work with Miss Brewer?
A. What do you mean "work"?
Q. Well, she was located in Cincinnati, Ohio, correct?
A. But they are in constant contact with Cincinnati every day.

141

The personnel people, I was calling them. That -- you are not working physically in the same plant, but you're in touch with them constantly, yes.
MS. CATALDO: Could you mark that 9.
(Marked, Exhibit 9, e-mail dated 2/2/06.)
Q. I'm showing you what has been marked as Exhibit 9.
Do you recognize this document?
A. Uh-huh.
Q. What is it?
A. It's an e-mail that I sent to Gall & Gall.
Q. It's an e-mail that you sent to Steven Gall on Thursday, February 2nd, 2006, correct?
A. Uh-huh.
Q. And this is prior to your employment beginning with F+W; is that correct?
A. It couldn't have been.
Oh, it was, okay.
Q. And the subject of this e-mail says "Background check book research." Do you see that?
A. Yes.
Q. You write, "Dear Mr. Gall, I'm currently

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 1

fw
F+W PUBLICATIONS, INC.

February 1, 2006

**Personal and Confidential**
Christine Verad
P.O. Box 583
Milton, MA 02186

Dear Christine,

This letter will confirm an offer of employment for you to join us as a Temporary Research Assistant at Adams Media, an F+W Publications Company. Your start date will be Monday, February 6, 2006.

This is a temporary position lasting the following dates Monday, February 6, 2006 – Friday, April 28, 2006; we do reserve the right to complete the assignment prior to this end date or extend on a weekly basis should the need arise.

Your compensation will be $10 per hour, paid on a biweekly basis.

The Company reserves the right to change any and all policies that are in force at any time. This letter is presented as confirmation of the offer only and does not constitute a contract. This offer is contingent upon successful completion of a background check. Failure to complete the background check will result in termination of this offer.

Christine, we are very enthusiastic about the prospect of having you join us at F+W. The Company has enjoyed spectacular growth during the last few years, and we sincerely believe we are creating an important enterprise that will flourish for years to come.

Perhaps most important, it seems clear to all of us here that you would find the company to be an enjoyable place to work, with people you will like and respect. We are enormously proud of the culture at Adams and F+W. It is an energetic place with superb product supporting exciting business goals – with terrific people of high integrity.

If you have any questions or concerns, please let us know.

Sincerely,

Amy Brewer
Recruiting Manager
F+W Publications

C. Varad
Exhibit No. 1
Date: 04/18/07
Reporter: P.A. Bucko

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD,<br><br>Plaintiff,<br>v.<br><br>REED ELSEVIER INCORPORATED,<br>d/b/a LexisNexis, Lexis Nexis Risk & Information<br>Analytics Group, Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06 CA 11370 MLW |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 2

MoSJ ex1

kp MEMORY MAKERS print I.D. fw F+W PUBLICATIONS, INC. SCUBA DIVING Horticulture adams media

# APPLICATION FOR EMPLOYMENT

We consider applicants for all positions without regard to race, color, religion, sex, national origin, age, marital or veteran status, qualified disability, or any other protected status. Qualified applicants are considered for employment according to the laws of the respective state of employment.

INSTRUCTIONS: **Applicants must furnish complete and accurate information. Incomplete applications will not be considered for employment. You may attach a resume, but complete this application as well and attach resume to back (DO NOT WRITE "SEE RESUME" on application). In responding to questions on this application, continue on a separate sheet of paper if you require more space.**

***(PLEASE READ CAREFULLY, COMPLETE IN BLACK INK and PLEASE PRINT)***

Date of application:

Last Name: Varad First Name: Christine M.I.: M.

Address: P.O. Box 583 Phone: (781) 545 5506

City: Milton State: MA Zip: 02186 Cell Phone: ( ) N/A

Lived here since: mailing address Best Time To Call:

Social Security Number: 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 Date available to start: 2/6

Position Applying For: Research Assistant

First Preference: as above Salary Expected: $ 10.00 per hour

Second Preference: N/A Salary Expected: $ per

☑ Full-time ☐ Part-time ☐ Days ☐ Evenings ☐ Weekends ☐ Other: temp.

(It is not necessary for you to identify unavailability for work because of religious observance or practice. After, and if, a job offer is made, we will consider whether a reasonable accommodation can be made for your observance.)

Where did you hear about employment at F+W Publications, Inc.?

☐ Newspaper: ☐ Referral Source: ☐ Web Site:

☐ Advertising Source: ☐ Walk-in Applicant ☑ Other: internet ad

Have you ever applied for employment at F+W Publications, Inc. before? ☐ Yes ☑ No If "Yes", when?

Have you ever been employed by F+W Publications, Inc.? ☐ Yes ☑ No If "Yes", When?

Where?

**EDUCATIONAL DATA**

High School: Framingham North H.S. Address: A Street

City: Framingham State: MA Zip Code: 01701

Did you graduate? ☑ Yes ☐ No "No" Highest grade achieved: Have you received your GED? ☐ Yes ☐ No

College: Mass. College of Art Address: Huntington Ave

City: Boston State: MA Zip Code: 02110

Major: Graphic Design Dates Attended: 1973 – 1980

Degree received: B.F.A. Grade Point Average: N/A

Trade, Business or Correspondence School: N/A

Address: City: State: Zip Code:

Major: Dates Attended:

Designed by: HR Perspective 08/04

C. Varad
Exhibit No.2
Date: 04/18/07
Reporter: R.A. Bucko

## GENERAL INFORMATION

(In responding to these questions, continue on a separate sheet if you require additional space.)

Are you planning to pursue further studies? ☐ Yes ☐ No If "Yes", When, Where and What courses?

undecided

In order to permit a check of your work and education records, should we be made aware of any change of name or assumed name that you previously used? ☒ Yes ☐ No If "Yes", identify the name(s) and relevant dates:

Maiden name: Christine Mooney

If employment is offered, can you submit a birth certificate, social security card, certificate of U.S. citizenship or verification of your legal right to work in the U.S.? ☒ Yes ☐ No

(Pursuant to the Immigration Reform and Control Act of 1986, all applicant's who receive an offer of employment must immediately complete an I-9 form and produce documentation, no later than seventy-two hours after commencement of employment, establishing their identity and authorization for employment in the United States.)

If employment is offered, can you provide personal identification such as U.S. Passport, a driver's license or photographic identification card issued by the state? ☒ Yes ☐ No

Are you over 18 years of age? ☒ Yes ☐ No If "No", state age: ________ (If "No", Employment is subject to verification that you are of legal age to work.)

Have you ever been convicted of or plead guilty to a crime? ☐ Yes ☒ No If "Yes", please explain:

**A "Conviction" will not automatically disqualify you from being considered as a candidate for employment.**

Do you (please check all that apply): ☑ Speak English? ☑ Read English? ☑ Write English?

Do you speak, read or write a language other than English? ☑ Yes ☐ No If "Yes", please specify: French

## Activities/Special Skills

Include any activities and/or skills that you feel would be relevant to the position you are applying for:

Please see resume.

Special Training or Skills:

# EMPLOYMENT EXPERIENCE

Start with your present or last job, account for all periods of time, unemployment and military service included.

**(All Applicants Must Account For The Last 10 Years.)**

**(If you need additional space, please continue on a separate sheet of paper.)**

Current Employer or Most Recent Employer: R.O.T Staffing, Inc.
Address: ~~300 1st Avenue~~ 31 Freemont Street
City: Needham State: Massachusetts Zip: 02494
Phone: (781) 455-7114 Supervisor's Name: Matt Beck
Position Held: Commuter Rail Counter ☒ Full-Time ☒ Part-Time
Job Duties & Responsibilities: Counting passengers on commuter rail cars
Start Salary: ______ Final Salary: ______ week/month ______ Bonus/Commission
Employed From: 10/05 To: 11/05 Reason For Leaving: temp. position
May we contact this employer? ☒ Yes ☐ No If "No", please explain: ______

**CURRENT EMPLOYER or MOST RECENT EMPLOYER MARKED "NO" MAY BE CONTACTED AFTER A JOB OFFER HAS BEEN MADE.**

**Applicant's Signature:** ______ **Date:** ______

Company: ______
Address: ______
City: ______ State: ______ Zip: ______
Phone: (______) ______ Supervisor's Name: ______
Position Held: ______ ☐ Full-Time ☐ Part-Time
Job Duties & Responsibilities: ______
Start Salary: ______ Final Salary: ______ week/month ______ Bonus/Commission
Employed From: ______ To: ______ Reason For Leaving: ______

Company: ______
Address: ______
City: ______ State: ______ Zip: ______
Phone: (______) ______ Supervisor's Name: ______
Position Held: ______ ☐ Full-Time ☐ Part-Time
Job Duties & Responsibilities: ______
Start Salary: ______ Final Salary: ______ week/month ______ Bonus/Commission
Employed From: ______ To: ______ Reason For Leaving: ______

Company: ______
Address: ______
City: ______ State: ______ Zip: ______
Phone: (______) ______ Supervisor's Name: ______
Position Held: ______ ☐ Full-Time ☐ Part-Time
Job Duties & Responsibilities: ______

Start Salary: ____________ Final Salary: ____________ week/month ____________ Bonus/Commission

Employed From: ________ To: ________ Reason For Leaving: ____________

## ADDITIONAL INQUIRIES CONCERNING EMPLOYMENT HISTORY

(In responding to these questions, continue on a separate sheet if you require additional space.)

List dates and reasons for any gaps in employment experience you listed over a one-month period. N/A

## RESIDENTIAL HISTORY

(This information is needed and will be used only in relationship to your background check.)

**(All Applicants Must Account For The Last 10 Years.)**

(If you need additional space, please continue on a separate sheet of paper.)

List Below Starting With The Last Previous Address First:

City: 88 Greenfield Lane Scituate, MA 02066

County: U.S.A. State: ________ Zip: ________

Lived There From: ________ To: ________

City: ________

County: ________ State: ________ Zip: ________

Lived There From: ________ To: ________

City: ________

County: ________ State: ________ Zip: ________

Lived There From: ________ To: ________

City: ________

County: ________ State: ________ Zip: ________

Lived There From: ________ To: ________

City: ________

County: ________ State: ________ Zip: ________

Lived There From: ________ To: ________

City: ________

County: ________ State: ________ Zip: ________

Lived There From: ________ To: ________

City: ________

County: ______ State: ______ Zip: ______

Lived There From: ______ To: ______

## MILITARY SERVICE

N/A

Were you in the U.S. Armed Forces? ☐ Yes ☐ No If "Yes" What branch: ______

Length of Service: From: ______ To: ______ Rank at discharge: ______

Describe any special job related training received relating to position applied for: ______

Have you ever had training/schooling while in the military that would be related to the position in which you are applying?

☐ Yes ☐ No If "Yes", describe: ______

## REFERENCES

**Give name, address and telephone numbers of 5 personal references that are not related to you and are not previous employers.**

Name: Kristin McCarthy Home Phone: (617) 422 7418
Address: New England School of Law email address: kmccarth@library.nesl.
City: Boston State: Mass. Zip:
Years Acquainted: 5(+) Occupation: Reference Librarian

Name: Judy Lamar Home Phone: ( ) 617 422 7303
Address: New England School of Law email address: slamar@nesl.edu
City: Boston State: Mass. Zip:
Years Acquainted: 5+ Occupation: Lawyer / Reference Librarian

Name: Matt Beak Home Phone: ( ) 781455-1114
Address: P.O. / Staffing email address:
City: Needham State: Mass Zip:
Years Acquainted: Occupation: Supervisor

Name: Georgina – Senior Agent Home Phone: ( georginascott@bellsouth...
Address: Christian Literary email address: georgina@christianliterary.co...
City: New York State: New York Zip:
Years Acquainted: My literary agent Occupation:

Name: Monica Martinez Home Phone: ( ) 972 3902712
Address: 726 West McDermott email address: editor@intuitionpress.com
City: Allen State: Texas Zip: 75013
Years Acquainted: 1+ Occupation: Publisher

Designed by: HR Perspective 08/04

# DRIVING RECORD

(In responding to these questions, continue on a separate sheet if you require additional space.)

Do you have a valid driver's license? ☒ Yes ☐ No How long have you been a licensed driver? 25+

Driver's License Number: S00642528 Expiration Date: 4/30/07 Issuing State: MA

List any restrictions on driver's license: NO

If less than 3 years in this state, please provide what state you were previously licensed in: N/A

**If answer is "Yes" to any of the following questions, please explain, giving dates and details.**

Have you been cited for speeding during the last three years? ☐ Yes ☒ No

Have you been cited for any moving violation during the past three years (left turn, etc.)? ☐ Yes ☒ No

Has your driver's license ever been revoked or suspended? ☐ Yes ☒ No

Have you ever been placed on suspension or probation? ☐ Yes ☒ No

Have you had a vehicle accident of any type within the last three years? ☒ Yes ~~☒ No~~

1. I was driven into by a drunk driver last spring and my car was stolen in May 2005.

Have you ever been cited for reckless driving? ☐ Yes ☒ No

Has your auto insurance ever been cancelled or has any company declined to insure you? ☐ Yes ☒ No

# AS AN APPLICANT YOU AGREE TO AND UNDERSTAND THE FOLLOWING

I hereby affirm that the information provided in this application (and accompanying resume, if any) is true and complete to the best of my knowledge. I also agree that falsified information, significant omissions or misrepresentations may disqualify me and may be considered sufficient justification for dismissal if discovered at a later date.

1. You must meet Minimum Age Requirements of Applicable Laws.

2. The Company may conduct investigative inquiries, which include consumer, criminal, driving and other reports. These background inquiries include information as to character, work habits, education, performance and experience along with reasons for termination of past employment from previous employers as well as verifications of current employment. By signing this application, you authorize the Company to make these investigations, and you indicate your awareness that false statements or failures to disclose information asked for on this form may be sufficient to disqualify you for employment, or if employed may result in your dismissal.

   Your application will be kept on active file for one year, if at that time you wish to be reconsidered for employment; a new resume must be submitted.

3. F+W Publications, Inc. hires only those persons who are legally entitled to work in the United States. Every offer of employment made by F+W Publications, Inc. is subject to the condition that the employee complete Part 1 of Form I-9 and show documents, provided by law and acceptable to F+W Publications, Inc., to prove identity and employability. Failure to meet this condition will result in an automatic revocation of the offer of employment.

4. I understand that this employment application, any oral representations made by the Company and any other Company documents are not contracts of employment, and that any individual who is hired may voluntarily leave employment upon proper notice, and may be terminated by the employer at any time for any reason. I understand that only the President of the Company may modify the above and that such modification must be in writing and signed by the President.

   It is F+W Publications, Inc. policy that all personally identifiable applicant information provided be held in confidence and properly safeguarded, and that the use of such information is limited to valid business, regulatory, or legal requirements.

   The above policies are subject to change at any time.

[signature] Signature of Applicant

Date 11/23/06

kp MEMORY MAKERS print I.D. fw F+W PUBLICATIONS, INC. SCUBA DIVING Horticulture adams media

IS AN EQUAL OPPORTUNITY EMPLOYER

# EMPLOYMENT BACKGROUND AUTHORIZATION

1. I hereby affirm that the information provided in this application (and accompanying resume, if any) is true and complete to the best of my knowledge. I also agree that falsified information or significant omissions may disqualify me and may be considered sufficient justification for dismissal if discovered at a later date. When I responded to questions on this application, I continued on a separate sheet of paper and attached it to this application when I required more space to fully answer all questions.

2. I understand that an investigative report may be generated on me that may include information as to my character, work habits, performance and experience, along with reasons for termination of past employment, financial/credit history. Criminal history records from any criminal justice agency in any or all-federal, state, city and county jurisdictions. Included as well but not limited to State Department of Motor Vehicle/Drivers' License Records to include traffic citations and registration. As well as Military National Personnel Record Center, Educational institutions including but not limited to transcripts or any individual, company, firm, corporation, present and/or past employers, public agencies (including the Social Security Administration and the Immigration & Naturalization Service). I fully give my consent to and understand that F+W Publications, Inc. and /or their agent Gall & Gall Company, Inc., may be requesting information from public and private sources about any of the information noted earlier in this paragraph.

3. If applicable all medical and workers' compensation information will be requested in compliance with all Federal and State laws including the Americans with Disabilities Act (ADA). According to the Fair Credit Reporting Act (FCRA), I am entitled to know if the considerations for which I am applying are denied because of information obtained from a consumer-reporting agency. If so, I will be notified and be given the name of the agency providing that report.

4. I agree that a photocopy or telephonic facsimile of this authorization shall be valid as the original. This release is valid for most federal, state and county agencies including the Minnesota Department of Labor.

5. Minnesota/California applicants only. If you want a copy of the report ordered, check this box ❑. The report will be sent by the consumer-reporting agency to you at the address listed below your signature.

6. I hereby authorize, without reservation, any one contacted by F+W Publications, Inc. and /or their agent Gall & Gall Company, Inc., to furnish the information described in form.

**APPLICANT COMPLETE THE FOLLOWING:**

Christine M. Varad
Signature

1/23/06
Today's Date

Christine M. Varad
Please, print full name

The following information is required by law enforcement agencies and other positive identification purposes when checking public records. It is confidential and will not be used for any other purposes.

Christine M. Mooney
Please, print other names you have used

013429612
Social Security Number

4/30/55
Date of Birth

88 Greenfield Lane
Home Address

Scituate
City

MA.
State

02066
Zip

[illegible]0642528
Driver's License Number and State

Christine M. Varad
Name as it appears on License

Have you ever been convicted of or plead guilty to a crime? ☒ No ❑ Yes If yes, please explain: ______

**A "Conviction" will not automatically disqualify you from being considered as a candidate for employment.**

FAIR CREDIT REPORTING ACT NOTICE: In accordance with the Fair Credit Reporting Act, this information may only be used to verify a statement(s) made by an individual in conjunction with legitimate business needs. The depth of information available varies from state to state. Status of updates is available on request. Although every effort has been made to assure accuracy. Gall & Gall Company, Inc.'s policy requires purchasers of these reports to have signed a Service Agreement and maintain original release forms of the applicant for those numbers of years to comply with the F.C.R.A. This assures Gall & Gall Company, Inc. that users are familiar with and will

Designed by: HR Perspective 08/04

abide by their obligations, as stated in the FCRA, to the individuals named in these reports. Gall & Gall Company, Inc., 8555 N. Dixie Drive, Dayton, Ohio 45414, 937-264-4900 or 1-800-759-4255

Amy Barrows FHW

Pam Albers

513 531-2690

ext. 1305

1309

1987

Leville

Background Checks

Anyone being the Hallmark in the vault?

Christine 1:1

www.gallgall.com

SGall@gallgall.com

Steve

Freedom of Information Act

# FAIR CREDIT REPORTING ACT DISCLOSURE

F+W Publications, Inc. may wish to obtain a "consumer report" from a "consumer-reporting agency" when:

- A: considering your application for employment;
- B: deciding whether to continue your employment; or
- C: making other employment-related decisions that directly affect you.

In this case, F+W Publications, Inc. seeks your consent to obtain a consumer report because

☑ A ☐ B ☐ C

The terms "consumer," "consumer reporting agency," and "consumer report" are defined in the Fair Credit Reporting Act ("FCRA"), which applies to you. Under the FCRA, you are a "consumer."

A "consumer reporting agency" is a person or business that, for monetary fees, dues, or on a cooperative nonprofit basis, regularly assembles or evaluates consumer credit information or other information on consumers to furnish "consumer reports" to others, such as Gall & Gall Company, Inc.

A "consumer report" is any written, oral, or other communication of any information by a "consumer reporting agency" bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living that is used or collected for the purpose of serving as a factor in establishing the consumer's eligibility for employment purposes.

If F+W Publications, Inc. obtains a "consumer report" about you, and if it considers any information in the report when making an employment-related decision that directly and adversely affects you, you will be provided with a copy of the "consumer report" and a summary of your rights under the FCRA before the decision is finalized. You also may contact the Federal Trade Commission about your rights under the FCRA.

Before F+W Publications, Inc. can obtain a "consumer report" about you; you must give your consent in writing. After you have read this page completely, please turn to the next page, which allows you to give your consent.

[signature] 1/23/06

Signature of Applicant Date

*By signing above you acknowledge that you received a copy of this letter.*

# AUTHORIZATION TO OBTAIN A CONSUMER REPORT

By signing below, I, Christine M. Varad, acknowledge that I have read the attached document entitled "Fair Credit Reporting Act Disclosure." I hereby voluntarily authorize F+W Publications, Inc. to obtain a "consumer report" about me from a "consumer reporting agency," which may include information about my credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, and mode of living. I also authorize F+W Publications, Inc. to consider the report when making decisions regarding my employment at F+W Publications, Inc. I understand that I have rights under the Fair Credit Reporting Act, including the rights discussed in the attached "Fair Credit Reporting Act Disclosure."

I agree that a photocopy or telephonic facsimile of this authorization shall be valid as the original.

Signature of Applicant

Date 1/23/06

Richard Wallace
508 427-7100
ext. 6782

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 3

MOSJ 91

GALL & GALL COMPANY, INC.

## APPLICANT SCREENING REPORT

8555 N DIXIE DR * DAYTON, OH 45414
PHONE 937-264-4900 * 800-759-4255
FAX 937-264-4909 * 800-765-7393

| | | | | |
|---|---|---|---|---|
| FILE # | 75270 / ES1165 | REPORT DATE | 02/06/2006 | AMANDA MEYERS |
| REPORT TO | F&W PUBLICATIONS ES1165 | DATE ORDERED | 02/01/2006 | AMY BREWER |
| STREET | 4700 E GALBRATH | REPOSITORIES | | |
| CITY/ST/ZIP | | TYPE | F&W PUBLICATIONS | |

### APPLICANT INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| APPLICANT | VARAD, CHRISTINE M | SOC SEC | 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 | DOB | 04/30/1955 |
| ADDRESS | 88 GREENFIELD LN | CITY/ST/ZIP | SCITATE, MA 02066 | | |

### INVESTIGATIVE

#### COUNTY CRIMINAL RECORDS SEARCH

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | VARAD, CHRISTINE M |
| ALTERNATIVE IDENTIFIERS | MOONEY, CHRISTINE |
| DOB(S) SEARCHED | 04/30/1955 |
| JURISDICTION(S) | MA-PLYMOUTH |

CAUTION: Based On The Information Provided We Searched The Above Mentioned Jurisdiction(s) For Criminal Convictions For No Less Than Ten Years Unless Specified And Found No Individual By This Identification. This Means That No One By This Identification Has Been Found As Convicted Of A Criminal Charge In These Jurisdiction (s). Further Investigation Into Additional Jurisdictions May Be Warranted. Please Call For Assistance.

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | VARAD, CHRISTINE M |
| ALTERNATIVE IDENTIFIERS | MOONEY, CHRISTINE |
| DOB(S) SEARCHED | 04/30/1955 |
| JURISDICTION(S) | MA-NORFOLK |

C. Varad
Exhibit No.3
Date: 04/18/07
Reporter: P.A. Bucko

CAUTION: Based On The Information Provided We Searched The Above Mentioned Jurisdiction(s) For Criminal Convictions For No Less Than Ten Years Unless Specified And Found No Individual By This Identification. This Means That No One By This Identification Has Been Found As Convicted Of A Criminal Charge In These Jurisdiction (s). Further Investigation Into Additional Jurisdictions May Be Warranted. Please Call For Assistance.

#### INSTACRIMINAL NATIONAL (MULTISTATE) SEARCH

| | |
|---|---|
| RESULTS | NO REPORTABLE RECORDS FOUND |
| NAME(S) SEARCHED | CHRISTINE VARAD |
| DOB SEARCHED | 04/30/1955 |
| JURISDICTION(S) SEARCHED | AK AOC,AK Sex Offender,AL DOC,AL Sex Offender,AR AOC,AR DOC,AR Sex Offender,AZ Maricopa Superior Archive,AZ Maricopa Felony,AZ Maricopa Misdemeanor,AZ AOC,AZ Pima,AZ Mohave,AZ DOC,AZ Maricopa Superior,AZ Sex Offender,CA Fresno Index,CA Orange,CA Sacramento,CA Riverside,CA Los Angeles,CA Santa Clara,CA San Bernardino,CA Santa Barbara,CA Santa Cruz,CA Alameda,CA Butte,CA Contra Costa Municipal,CA Contra Costa Superior,CA Fresno,CA Indio,CA Marin Municipal,CA Marin Superior,CA San Diego Municipal,CA San Diego Superior,CA San Luis Obispo,CA Santa Clara Municipal,CA Ventura,CA San Mateo,CA Sex Offender,CO Archived Sex Offender,CO Sex Offender,CT Judicial Information System,CT DOC,CT Traffic,CT Sex Offender,CT Out of State Sex Offender,DC DOC,DC Sex Offender,DE Sex Offender,FL Pinellas,FL DOC,FL AOC,FL Osceola,FL Miami Dade,FL Brevard,FL Charlotte,FL Orange,FL Bay,FL Duval,FL Hillsborough,FL Palm Beach,FL Hernando,FL Indian River,FL Lee,FL Pasco,FL Suwannee,FL Monroe,FL Highlands,FL Alachua,FL Broward,FL Sex Offender,GA DOC,GA Bureau of Investigations,GA Decatur Arrest Records,GA Sex Offender,HI Sex Offender,IA DOC,IA AOC,IA Sex Offender,ID DOC,ID Sex Offender,IL DOC,IL Cook,IL Sangamon,IL Peoria,IL Sex Offender,IN DOC,IN Sex Offender,KS DOC,KS Sedgwick,KS Sedgwick Archive,KS Sex Offender,KY DOC,KY Lexington Fayette,KY Sex Offender,LA Sex Offender,MA Sex Offender,MD DOC,MD Sex Offender,ME DOC,ME Sex Offender,MI DOC,MI OTIS,MI Wayne,MI Sex Offender,MN DOC,MN DPS,MN Sex Offender,MO DOC,MO Sex Offender,MO Cape Girard Sex Offender,MO Cole Sex Offender,MO Barton Sex Offender,MO Jefferson Sex Offender,MO Newton Sex Offender,MO Laclede Sex Offender,MO St Louis Sex Offender,MS Hinds,MS DOC,MS Sex Offender,MT DOC,MT Sex Offender,NC AOC,NC Archived DOC,NC DOC,NC Sex Offender,NC Sex Offender,ND AOC,ND Sex Offender,ND Sex Offender,NE DOC,NE Sex Offender,NH DOC,NH Sex Offender,NJ AOC,NJ DOC,NJ Archive DOC,NJ Sex Offender,NM DOC,NM Sex Offender,NV Archive DOC,NV DOC,NV Sex Offender,NY DOC,NY Sex Offender,AppAlert Federal Criminal Data,AppAlert OFAC,OH Portage,OH Greene,OH DOC,OH Sex Offender,OK DOC,OK AOC,OK Sex Offender,OR DOC,OR AOC,OR Sex Offender,PA DOC,PA Supplemental Courts,PA Traffic,PA AOC,PA Sex Offender,Proprietary Offender Data,RI Judicial Technology Center,RI Sex Offender,SC DOC,SC Sex Offender,SD Sex Offender,SD Aberdeen Sex Offender,SD Sioux Falls Sex Offender,TN DOC,TN Davidson Sheriff,TN AOC,TN Nashville,TN AOC,TN Sex Offender,TX Bexar Felony,TX Bexar Misdemeanor,TX Travis Misdemeanor,TX Travis Felony,TX Ft Bend Felony,TX Ft Bend Misdemeanor,TX Montgomery,TX Potter Misdemeanor,TX Potter Felony,TX Denton,TX El Paso,TX Harris Felonies,TX Harris Misdemeanor,TX Dallas,TX Gregg,TX Jefferson,TX Victoria,TX Dept of Public Safety,TX Sex Offender,UT DOC,UT AOC,UT Sex Offender,VA Circuit,VA General District,VA Fairfax,VA Traffic,VA Sex Offender,VT Sex Offender,WA DOC,WA Courts of Ltd Jurisdiction,WA AOC SCOMIS,WA Sex Offender,WI DOC,WI AOC,WI Sex Offender,WV Sex Offender,WY Sex Offender |

CAUTION: Based On The Information Provided We Searched Our Database For The Above Mentioned Jurisdiction(s) For Criminal Convictions And Found No Individual By This Identification. This Means That No One By This Identification Is Within Our Database As Convicted Of A Criminal Charge For These Jurisdiction(s). Therefore It Cannot Be Confirmed That The Applicant Has Not Ever Been Convicted Of A Criminal Charge. Further Investigation May Be Warranted. Call For Assistance!

## SOCIAL SECURITY SEARCH

### SOCIAL SECURITY SEARCH [# 092590]

Record # 01

| | |
|---|---|
| Name | CHRISTINE M VARAD |
| SSN | 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 |
| Address | 88 GREENFIELD LN , SCITUATE, MA 02066 08/01/1993 |
| HAWK | REQUESTED PRODUCT DELIVERED |
| | SSN issued from 1966 to 1968; State: MA (input) |
| | SSN issued from 1966 to 1968; State: MA (file) |
| | INPUT SSN ISSUED: 1966 - 1968; STATE: MA |
| | FILE SSN ISSUED: 1966 - 1968; STATE: MA |

### REFERRAL

Reporting Bureau(s) Trans Union
P.O. Box 1000
Chester, PA 19022
800-888-4213

### DISCLOSURE

The Information Contained In This Social Security Reports Section Should Only Be Used As A Tool To Further Research And Verifications. Please Call For Assistance.

## REPOSITORIES

### ADDRESS SOURCE MANAGER

RESULTS RECORDS FOUND

SSN SEARCHED 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

| FULL NAME / SSN | AGE / DOB | ADDRESS | DATES | PHONE INFORMATION |
|---|---|---|---|---|
| CHRISTINE VARAD 013-42-xxxx | | PO BOX 583 MILTON, MA 02186 | Sep 05 - Dec 05 | |
| CHRISTINE M VARAD 013-42-xxxx | 50 Apr 30, 1955 | 88 GREENFIELD LN SCITUATE, MA 02066 | Jun 89 - Aug 05 | (781) 545-0707 |
| CHRISTINE VARAD 013-42-xxxx | 50 Apr 30, 1955 | CNS # 18027 SIOUX FALLS, SD 57117 | Jun 92 - Jun 92 | |
| CHRISTINE VARAD | | CNS 18027 | Jun 92 - Jun | |

| | | |
|---|---|---|
| 013-42-xxxx | SIOUX FALLS, SD 57117 | 92 |
| CHRISTINE MOONEY<br>013-42-xxxx | 88 GREENFIELD LN<br>SCITUATE, MA 02066 | Dec 87 - Dec<br>91 |
| CHRISTINE MOONE<br>013-42-xxxx | 88 GREENFIELD LN<br>SCITUATE, MA 02066 | Jul 87 - Dec<br>90 |

| | |
|---|---|
| Social Security Number | 013-42-xxxx |
| Location | Massachusetts |
| Dates Issued | Jan 01, 1966 - Dec 31, 1968 |

WARNING: This search may not be used as the basis for an adverse action on an applicant. It should only be used to verify or correct an applicant's information, or as a tool to further research of public records or other verifications.

DISCLAIMER

Information Contained Here In Meets All The Guidelines Set Forth By The Fair Credit Reporting Act. This Is Confidential Information And Not To Be Divulged Except As Required By Public P=Law P=91-508, 93-579, 94-239. This Report Is Furnished In Response To An Inquiry For The Purpose Of Determining The Propriety Of Dealing With The Consumer. It Is Based Upon Information Obtained In Good Faith From Sources Deemed Reliable.

*** END OF REPORT ***

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 4

------ Forwarded Message
From: "Brewer, Amy" < >
Date: Fri, 31 Mar 2006 10:00:29 -0500
To: "Verad, Christine" < >
Conversation: Gall/Gall Bcheck
Subject: RE: Gall/Gall Bcheck

Yes, that is what I am stating--the only information we receive is the report that has been previously sent to you. If you need additional information, please call Gall and Gall.

Amy Brewer
Recruiting Manager
F+W Publications, Inc.
4700 E. Galbraith Road
Cincinnati, OH 45236
513-531-2690 ext. 1309

-----Original Message-----
From: Verad, Christine
Sent: Friday, March 31, 2006 10:00 AM
To: Brewer, Amy
Subject: Re: Gall/Gall Bcheck

Are you formally stating on behalf of F&W Publishing that no additional background information was received by you or your office and staff in connection with my name and my application for employment?

On 3/31/06 8:38 AM, "Brewer, Amy" < >
wrote:

> We already have provided you the background report we received from Gall
and
> Gall. If you need anything in relation to your background check, please
Gall
> and Gall. This issue is between them and you.
>
> Thank you,
>
> Amy Brewer
> Recruiting Manager
> F+W Publications, Inc.
> 4700 E. Galbraith Road
> Cincinnati, OH 45236
> 513-531-2690 ext. 1309
>
>
>
> -----Original Message-----
> From: Verad, Christine
> Sent: Friday, March 31, 2006 8:24 AM
> To: Brewer, Amy
> Subject: Re: Gall/Gall Bcheck
>
>

C. Varad
Exhibit No.4
Date: 04/18/07
Reporter: P.A. Bucko

> Amy --
>
> You state that, "we don't have anything else from Gall and Gall"
to provide
> you." I want to be provided with certified copies of any and all
> background check results you have received in connection with my name
from
> any source, including Gall and Gall. This request is pursuant to my
rights
> under the law.
>
> Christine Varad
>
> On 3/30/06 9:26 AM, "Brewer, Amy" < >
wrote:
>
>> Christine--
>>
>> I have provided you a copy of the background check previously--we don't
have
>> anything else from Gall and Gall to provide to you. If you would like
another
>> copy mailed to you, I will put one in the mail.
>>
>> As for a contact at Gall and Gall, I have provided you their phone
number and
>> you can call and speak with someone there. I have done everything you
have
>> requested and the matter is between you and Gall and Gall, there is
nothing
>> more I can provide to you at this time.
>>
>> Please contact them as you feel necessary.
>>
>> Amy Brewer
>> Recruiting Manager
>> F+W Publications, Inc.
>> 4700 E. Galbraith Road
>> Cincinnati, OH 45236
>> 513-531-2690 ext. 1309
>>
>>
>>
>> -----Original Message-----
>> From: Verad, Christine
>> Sent: Thursday, March 30, 2006 9:13 AM
>> To: Brewer, Amy
>> Subject: Re: Gall/Gall Bcheck
>>
>>
>> I want the name of the individual that F&W Publishing contacts for
>> background checks Amy. In addition, I am sure that you have contacted
legal
>> and now know that it is my legal right under the law to be provided
with a
>> complete copy of that background check. I have asked for one, and I
am
>> asking again today. I want a certified copy in order to be assured
that it

>> is a complete and unaltered copy as is my right under the law.
>> Christine Varad
>

------ End of Forwarded Message

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTINE VARAD, )
) C.A. No. 06 CA 11370 MLW
Plaintiff, )
v. )
)
REED ELSEVIER INCORPORATED, )
d/b/a LexisNexis, Lexis Nexis Risk & Information )
Analytics Group, Inc., )
)
Defendant. )

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Civil Docket No.: **06 CA 11370 MLW**

---

Christine. Varad,
Plaintiff,
v.

Reed Elsevier Incorporated,
d.b.a. *Lexis Nexis Corporation,*
*Lexis Nexis Accurint,*
Defendant.

---

PLAINIFF'S RESPONSE TO DEFENDANT'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
DATED February 23, 2007.

Plaintiff Christine Varad, objects to the "Instructions" and to the 'Directions" sections that precede Defendant's requests for production of documents. Rule 26 and 34 of the Federal Rules of Civil Procedure define any obligation of the plaintiff to the defendant concerning discovery of documents, and as to which, the Defendant has no authority to attempt to amend, alter or redefine. This general objection is incorporated within each objection and answer below as if fully set forth therein. The Plaintiff declines to either accept or follow said "instructions" or "directions."

Request No.: 1 — *Varad's employment application(s) for F&W.*

Response No.: 1 — A copy of Varad's "employment application for F&W" is produced herein, attached Exhibit A.

Request No.: 2 — *All documents concerning Varad's employment and/or potential employment with F&W.*

Response No.: 2 — A copy of Varad's "employment application for F&W" is produced in Exhibit A and additional documents responsive to this request are included in Exhibit B.

Request No.: 3 — *All documents concerning Gall & Gall, including but not limited to any reports and/or information provided by Gall & Gall to Varad and/or F&W.*

Response No.: 3 — Copies of responsive documents are attached Exhibit C.

C. Varad
Exhibit No.5
Date: 04/18/07
Reporter: P.A. Bucko

Request No.: 4 — *All documents concerning communications between Varad and Reed.*

Response No.: 4 — Copies of responsive documents are attached Exhibit D.

Request No.: 5 — *All documents concerning communications between Varad and F&W.*

Response No.: 5 — Copies of responsive documents are attached Exhibits A and B.

Request No.: 6 — *All documents concerning communications between Varad and Gall & Gall.*

Response No.: 6 — Copies of responsive documents are attached Exhibit C.

Request No.: 7 — *All documents concerning communications between Varad, on the one hand, and any other party, on the other hand, concerning the allegations in the Complaint.*

Response No.: 7 — Varad objects to this request on the ground that it is too vague and overly broad to form a reasonable understanding of the scope of the request. Without waiving the foregoing objection, Varad responds to this request with documents in Exhibit F.

Request No.: 8 — *All documents that support, or tend to support, the claims set forth in the Affidavit of Christine M. Varad dated October 27, 2006.*

Response No.: 8 — Copies of responsive documents are attached Exhibit E.

Request No.: 9 — *All documents concerning Varad's application for admission to the Massachusetts Board of Bar Examiners, including but limited to any application(s) for admissions, bar exam results, and any correspondence concerning acceptance and/or denial to the Massachusetts bar.*

Response No.: 9 — Upon information and belief, all bar applications and all related documentation are publicly available and as such the documents and information requested are as equally and readily available to Reed as they are to Varad. Reed can obtain its own access to copies of publicly available documents.

Request No.: 10 — *All documents concerning Varad's application for admission to the Maine Board of Bar Examiners, including but limited to any application(s) for admissions, bar exam results, and any correspondence concerning acceptance and/or denial to the Maine bar.*

Response No.: 10 — Upon information and belief, all bar applications and all related documentation are publicly available and as such the documents and information requested are as equally and readily as available to Reed as they are to Varad. Reed can obtain its own access to copies of publicly available documents.

Request No.: 11 — *All communications between Varad, on the one hand, and Equifax, Experian and/or Trans Union, on the other hand, concerning Varad's address history.*

Response No.: 11 — Copies of documents responding to this request are produced, attached Exhibit G.

Request No.: 12 — *All documents concerning the damages plaintiff alleges were caused by Reed, including without limitation all documents concerning "lost employment" and "lost professional licensing opportunities" as alleged in the complaint.*

Response No.: 12 — Copies of documents responding to this request are produced, attached Exhibit H. This request will be supplemented as required with any additional documentation that comes into my possession and control concerning this request.

Request No.: 13 — *All documents that support plaintiff's claim that the allegedly incorrect addresses are defamatory.*

Response No.: 13 — Upon information and belief, the false addresses provided to F&W by Gall & Gall based on information provided to them by Reed Elservier, Inc. and subsequently utilized for the purpose of evaluating Varad's character for truthfulness as a potential employee and the completeness and truthfulness of the information contained in her employment application are defamatory per se, and as such, additional documentation is not required to support a claim of defamation based on those acts. Therefore Varad objects to this request on the grounds that it is overly broad, vague, ambiguous and repetitious as responsive documents are produced within all attached exhibits.

Request No.: 14 — *All documents on which plaintiff relies in claiming that Reed is subject to the Fair Credit Reporting Act.*

Response No.: 14 — A copy of Varad's "employment application for F&W" is produced in response to Request No.1, attached Exhibit A; and the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. 1681 et seq. is a public law freely available in electronic document form and as such the information requested is just as available to Reed as it is to Varad. Reed can obtain its own access to copies of publicly available documents.

Request No.: 15 — *All documents that support, or tend to support, plaintiff's claims in the complaint.*

Request No.: 15 — Upon information and belief, all documents that support or tend to support the claims contained in the complaint are produced in exhibits attached hereto, however this response will be

supplemented should additional responsive documents or information come into my possession and control.

Request No.: 16 *All documents that refute, or tend to refute, Plaintiff's claims in the complaint.*

Response No.: 16 Upon information and belief, I am not in possession or control of any documents that are responsive to this request.

Respectfully submitted,

Christine Varad
P.O. Box 583
Milton, Massachusetts 02186
781 534 8770

I certify that on this 21th day of March 2007, I caused a copy of *PLAINIFF'S RESPONSE TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DATED February 23, 2007* to be served on the attorney of record for defendant Reed Elsevier, Incorporated at the following address of record:

Kristin Cataldo
Donnelly, Conroy and Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
617 720 2880

Christine Varad

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 6

Forwarded Message
**From:** Christine Verad <Christine.Verad@adamsmedia.com>
**Date:** Thu, 16 Mar 2006 10:39:28 -0500
**To:** "Brewer, Amy" <Amy.Brewer@fwpubs.com>
**Conversation:** Background Results
**Subject:** Re: Background Results

Dear Amy,
I am a lawyer but am not currently practicing. I believe that all employees should review background check information for accuracy and that such should be done repeatedly and often. The repercussions of incorrect information are important and potentially extremely harmful in countless ways. Your understanding and concerns with this issue may not be based in knowledge of the law and mine is.

I must take all responsible steps to protect myself and that starts by contacting Gall/Gall at the level of access or recent dissemination of false information. My name is unique and should not be producing incorrect information where it is not a "family surname" at all. I would like you to find out who the best person to contact at Gall/Gall will be.

Thanks,
Christine Varad

On 3/15/06 2:45 PM, "Brewer, Amy" <Amy.Brewer@fwpubs.com> wrote:

Christine--

I have no problem providing you with the information for Gall and Gall but I am uneasy with your level of concern on this. From my understanding, if there is nothing that has shown up on your credit report, there is nothing that will be of harm to you or your background.

They will readily tell you that the information is not always correct when they run a check on your name, as you can imagine names are similar or the same and often incorrect information will show up. These addresses do not show up in the Social Security Check so they are not attached to your SSN only the name.

If you still feel that uneasy, I will find out who the correct person is for you to speak with.

Amy Brewer
Recruiting Manager
F+W Publications, Inc.
4700 E. Galbraith Road
Cincinnati, OH 45236
513-531-2690 ext. 1309

C. Varad
Exhibit No.6
Date: 04/18/07
Reporter: P.A. Bucko

-----Original Message-----
**From:** Verad, Christine
**Sent:** Wednesday, March 15, 2006 2:27 PM
**To:** Brewer, Amy
**Subject:** Re: Background Results

Dear Amy,
I have reviewed copies of my credit report and I have been in touch with them relative to the information supplied on those reports. None of the three big reporting entities have contained the addresses listed in the Gall/Gall report. Social security report only addresses that are in response to tax payer input and therefore do not report addresses held during non employment periods. My Social Security report does not contain the Gall/Gall address information either. The information disseminated by Gall/Gall is injurious to me. I would like you to supply me with the name of the Gall/Gall contact that F&W deals with so that I can talk to them about reviewing all information held in connection with my name

MOSJ exh

and social security number before any additional harm is done.

On 3/8/06 9:16 AM, "Brewer, Amy" <Amy.Brewer@fwpubs.com> wrote:

Christine--

I have done research into why two additional addresses were listed on your background report--please know that this report nor the information is disseminated to any other agency. The addresses are found through a database that pulls from several different locations, and may not always be the most accurate which is why we do a social security check, which is the most accurate.

The best advice we can give you is to pull a credit report and see if there are any discrepancies listed on it. You can go to www.annualcreditreport.com to pull your personal credit report, and if there are discrepancies contact the credit bureau to get them cleared up. This is going to be the best place for you to get the answers you are looking for.

Thanks,
Amy Brewer
Recruiting Manager
F+W Publications, Inc.
4700 E. Galbraith Road
Cincinnati, OH 45236
513-531-2690 ext. 1309

-----Original Message-----
**From:** Verad, Christine
**Sent:** Tuesday, March 07, 2006 8:23 AM
**To:** Brewer, Amy
**Subject:** Re: Background Results
**Importance:** High

Amy,
As I am sure you know, it is important that Gall and Gall not disseminate information that violates federal law, in this case, the Fair Credit Reporting Act. Can you ask them for a contact that I can connect with to correct the false information contained in their records and also make sure that there is no additional false entries? I guess I can contact the Federal Trade Commission and ask them what for the next step to initiate correction of the disinformation. It is important that background check information be correct in view of the uses that the information is accessed to verify and I do not want to be harmed by it.
Let me know.
Thanks,
Christine

On 3/1/06 7:49 AM, "Brewer, Amy" <Amy.Brewer@fwpubs.com> wrote:

Christine--

I received the message you left for Pam--feel free to call me direct, my number is below. I have not been able to get the information we spoke about Monday, and am working on it. I will contact you back as soon as I do have more information for you.

Thank you,

Amy Brewer
Recruiting Manager
F+W Publications, Inc.
4700 E. Galbraith Road
Cincinnati, OH 45236
513-531-2690 ext. 1309

------ End of Forwarded Message

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD,<br><br>Plaintiff,<br>v.<br><br>REED ELSEVIER INCORPORATED,<br>d/b/a LexisNexis, Lexis Nexis Risk & Information<br>Analytics Group, Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06 CA 11370 MLW |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 7

MoSS

GALL & GALL
COMPANY, INC.
*THE INFORMATION SOURCE™*

4/5/2006

Christine M. Varad
PO Box 586
Milton, MA 02186

In re: F+W Publishing applicant screening report

Ms. Varad,

This letter should answer your request for information on the screening report requested by F+W Publishing through our company. We have updated, per your request, the Address Source Manager information on our records and we have sent a corrected copy to F+W Publishing as well as your copy, which is enclosed in this correspondence.

Address Source Manager is provided by ACCURINT, a division of Lexis Nexus, PO Box 538358, Atlanta, Georgia 30353. Toll Free Phone (888) 332-8244.

I am also enclosing a copy of an email sent to me, by you, in reference to a book you are writing. Should you have further questions or concerns, please call me.

Steven E. Gall / President
Gall & Gall Company, Inc
8555 N. Dixie Drive
Dayton Ohio 45414-2463
Phone: 937-264-4900 ext. 223 or 1-800-759-4255 ext. 223
Fax: 937-264-4909 or 1-800-765-7393

enclosure: report & email

C. Varad
Exhibit No.7
Date: 04/18/07
Reporter: P.A. Bucko

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 8

mo

GALL & GALL COMPANY, INC.

# APPLICANT SCREENING REPORT

8555 N DIXIE DR * DAYTON, OH 45414
PHONE 937-264-4900 * 800-759-4255
FAX 937-264-4909 * 800-765-7393

| | | | | |
|---|---|---|---|---|
| FILE # | 75270 / ES1165 | REPORT DATE | 04/05/2006 | AMANDA MEYERS |
| REPORT TO | F&W PUBLICATIONS ES1165 | DATE ORDERED | 02/01/2006 | AMY BREWER |
| STREET | 4700 E GALBRATH | REPOSITORIES | | |
| CITY/ST/ZIP | CINCINNATI, OH 45236 | TYPE | F&W PUBLICATIONS | |

## APPLICANT INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| APPLICANT | VARAD, CHRISTINE M | SOC SEC | 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 | DOB | 04/30/1955 |
| ADDRESS | 88 GREENFIELD LN | CITY/ST/ZIP | SCITATE, MA 02066 | | |

## INVESTIGATIVE

### COUNTY CRIMINAL RECORDS SEARCH

RESULTS NO REPORTABLE RECORDS FOUND
NAME(S) SEARCHED VARAD, CHRISTINE M
DOB(S) SEARCHED 04/30/1955
JURISDICTION(S) MA-PLYMOUTH

CAUTION: Based On The Information Provided We Searched The Above Mentioned Jurisdiction(s) For Criminal Convictions For No Less Than Ten Years Unless Specified And Found No Individual By This Identification. This Means That No One By This Identification Has Been Found As Convicted Of A Criminal Charge In These Jurisdiction (s). Further Investigation Into Additional Jurisdictions May Be Warranted. Please Call For Assistance.

RESULTS NO REPORTABLE RECORDS FOUND
NAME(S) SEARCHED VARAD, CHRISTINE M
DOB(S) SEARCHED 04/30/1955
JURISDICTION(S) MA-NORFOLK

C. Varad
Exhibit No.8
Date: 04/18/07
Reporter: P.A. Bucko

CAUTION: Based On The Information Provided We Searched The Above Mentioned Jurisdiction(s) For Criminal Convictions For No Less Than Ten Years Unless Specified And Found No Individual By This Identification. This Means That No One By This Identification Has Been Found As Convicted Of A Criminal Charge In These Jurisdiction (s). Further Investigation Into Additional Jurisdictions May Be Warranted. Please Call For Assistance.

### INSTACRIMINAL NATIONAL (MULTISTATE) SEARCH

RESULTS NO REPORTABLE RECORDS FOUND
NAME(S) SEARCHED CHRISTINE VARAD

| | |
|---|---|
| DOB SEARCHED | 04/30/1955 |
| JURISDICTION(S) SEARCHED | AK AOC,AK Sex Offender,AL DOC,AL Sex Offender,AR AOC,AR DOC,AR Sex Offender,AZ Maricopa Superior Archive,AZ Maricopa Felony,AZ Maricopa Misdemeanor,AZ AOC,AZ Mohave,AZ DOC,AZ Maricopa Superior,CA Orange,CA Riverside,CA Santa Clara,CA San Bernardino,CA Santa Cruz,CA Fresno,CA Indio,CA Santa Clara Municipal,CA Sex Offender,CO Archived Sex Offender,CO Sex Offender,CT Judicial Information System,CT DOC,CT Traffic,CT Sex Offender,CT Out of State Sex Offender,DC DOC,DC Sex Offender,DE Sex Offender,FL Pinellas,FL DOC,FL AOC,FL Osceola,FL Miami Dade,FL Brevard,FL Charlotte,FL Orange,FL Bay,FL Duval,FL Hillsborough,FL Palm Beach,FL Hernando,FL Indian River,FL Lee,FL Pasco,FL Suwannee,FL Monroe,FL Highlands,FL Alachua,FL Broward,FL Sex Offender,GA Decatur Arrest Records,IA DOC,IA AOC,IA Sex Offender,ID DOC,ID Sex Offender,IL DOC,IL Cook,IL Sangamon,IL Peoria,IL Sex Offender,KS DOC, Archive,KS Sex Offender,KY DOC,KY Lexington Fayette,KY Sex Offender,MD DOC,ME DOC,ME Sex Offender,MI DOC,MI OTIS,MI Wayne,MI Sex Offender,MN DOC,MN DPS,MN Sex Offender,MO DOC,MO Cape Girard Sex Offender,MO Cole Sex Offender,MO Barton Sex Offender,MO Jefferson Sex Offender,MO Newton Sex Offender,MO Laclede Sex Offender,MO St Louis Sex Offender,MS Hinds,MS DOC,MS Sex Offender,MT DOC,NC AOC,NC Archived DOC,NC DOC,NC Sex Offender,NC Sex Offender,ND AOC,ND Sex Offender,ND Sex Offender,NE DOC,NE Sex Offender,NH Sex Offender,NJ AOC,NJ DOC,NJ Archive DOC,NJ Sex Offender,NM DOC,NM Sex Offender,NV Archive DOC,NY DOC,NY Sex Offender,AppAlert Federal Criminal Data,AppAlert OFAC,OH Portage,OH Greene,OH DOC,OH Sex Offender,OK DOC,OK AOC,OR DOC,OR AOC,PA DOC,Proprietary Offender Data,RI Sex Offender,SC DOC,SC Sex Offender,SD Sex Offender,SD Aberdeen Sex Offender,SD Sioux Falls Sex Offender,TN Davidson Sheriff,TN Sex Offender,TX Bexar Felony,TX Bexar Misdemeanor,TX Travis Misdemeanor,TX Travis Felony,TX Montgomery,TX Potter Misdemeanor,TX Potter Felony,TX Denton,TX El Paso,TX Harris Felonies,TX Harris Misdemeanor,TX Dallas,TX Gregg,TX Jefferson,TX Victoria,TX Dept of Public Safety,TX Sex Offender,UT DOC,UT AOC,UT Sex Offender,VA Circuit,VA General District,VA Fairfax,VA Traffic,VT Sex Offender,WA DOC,WA Courts of Ltd Jurisdiction,WA AOC SCOMIS,WI DOC,WI AOC,WV Sex Offender,WY Sex Offender |

CAUTION: Based On The Information Provided We Searched Our Database For The Above Mentioned Jurisdiction(s) For Criminal Convictions And Found No Individual By This Identification. This Means That No One By This Identification Is Within Our Database As Convicted Of A Criminal Charge For These Jurisdiction(s). Therefore It Cannot Be Confirmed That The Applicant Has Not Ever Been Convicted Of A Criminal Charge. Further Investigation May Be Warranted. Call For Assistance!

## SOCIAL SECURITY SEARCH

### SOCIAL SECURITY SEARCH [# 092590]

Record # 01

| | |
|---|---|
| Name | CHRISTINE M VARAD |
| SSN | 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 |
| Address | 88 GREENFIELD LN , SCITUATE, MA 02066 08/01/1993 |
| HAWK | REQUESTED PRODUCT DELIVERED |

SSN issued from 1966 to 1968; State: MA (input)

SSN issued from 1966 to 1968; State: MA (file)

INPUT SSN ISSUED: 1966 - 1968; STATE: MA

FILE SSN ISSUED: 1966 - 1968; STATE: MA

## REFERRAL

Reporting Bureau(s) Trans Union
P.O. Box 1000
Chester, PA 19022
800-888-4213

## DISCLOSURE

The Information Contained In This Social Security Reports Section Should Only Be Used As A Tool To Further Research And Verifications. Please Call For Assistance.

## REPOSITORIES

### ADDRESS SOURCE MANAGER

RESULTS RECORDS FOUND

SSN SEARCHED 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

| FULL NAME / SSN | AGE / DOB | ADDRESS | DATES | PHONE INFORMATION |
|---|---|---|---|---|
| CHRISTINE M VARAD 013-42-xxxx | 50 Apr 30, 1955 | 88 GREENFIELD LN SCITUATE, MA 02066 | Jun 89 - Aug 05 | (781) 545-0707 |

Social Security Number 013-42-xxxx

Location Massachusetts

Dates Issued Jan 01, 1966 - Dec 31, 1968

WARNING: This search may not be used as the basis for an adverse action on an applicant. It should only be used to verify or correct an applicant's information, or as a tool to further research of public records or other verifications.

## DISCLAIMER

Information Contained Here In Meets All The Guidelines Set Forth By The Fair Credit Reporting Act. This Is Confidential Information And Not To Be Divulged Except As Required By Public P=Law P=91-508, 93-579, 94-239. This Report Is Furnished In Response To An Inquiry For The Purpose Of Determining The Propriety Of Dealing With The Consumer. It Is Based Upon Information Obtained In Good Faith From Sources Deemed Reliable.

*** END OF REPORT ***

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT</u>**

# TAB 7 – EXHIBIT 9

**Steven Gall**

**From:** christine11.1@juno.com
**Sent:** Thursday, February 02, 2006 12:20 PM
**To:** Steven Gall
**Subject:** background check book research

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Dear Mr. Gall,
I am currently working on a book that I hope will demystify background checks for the general public. I was hoping to get a chance to chat with you about background check computer data central registries primarily on the state level. For example the difference of access to public records v. confidentially held records and police access v. civil rights or FOI Act requests for access. Well, if you have a free moment and would be willing to give me a few research points of reference I would be very grateful. The public is better protected by knowledge of truths retained in the light of day as opposed to fears of false or misleading information held in shrouded darkness of secrecy.
Thank you,
Christine Varad

C. Varad
Exhibit No.9
Date: 04/18/07
Reporter: P.A. Bucko

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 10

MoSJ9

Gall and Gall Company
8555 North Dixie Drive
Dayton, Ohio 45414
937 264-4909

March 26, 2006

**RE: File Number: 75270/ES1165 : Varad, Christine**

Dear Gall and Gall Associate,

I am contacting you in response to my review of the "Applicant Screening Report" you submitted to my employer, F & W Publications. The report was ordered by Amy Brewer of F & W Publications on February 1, 2006 and provided to her on February 6, 2006 by Amanda Meyers of Gall and Gall Company.

The report provided contains patently false assertions regarding my residential address information from 1989 to the present in violation of the Fair Credit Reporting Act. I have reviewed my credit report from the Trans Union reporting agency and found no similar information.

I have been harmed and my rights and interests have been infringed by the dissemination of that false information and further harm will ensue if the false data is not corrected immediately. I have contacted Amy Brewer at the F & W Publications relative to this issue. I request that you to provide me with certified copies of any and all documents and information held, accessed, or accessible to, Gall and Gall Company in connection with my name immediately and without charge. If you do not respond by providing me the information and within a reasonable time period I will intricate legal action to procure it.

I can be reached at 781 545 5506 if you have any questions. My mailing address is P.O. Box 583, Milton, Massachusetts, 02186.

Sincerely,

Christine M. Varad

C. Varad
Exhibit No.10
Date: 04/18/07
Reporter: P.A. Bucko

CHRISTINE VARAD
P.O. BOX 586
MILTON, MASSACHUSETTS 02186

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 11

Steven Gall
Gall and Gall Company
8555 North Dixie Drive
Dayton, Ohio 45414

Fax: 937 264-4909

April 3, 2006

**RE: File Number: 75270/ES1165 : Varad, Christine**

Dear Mr. Gall,

I am writing in response to our telephone conversation this afternoon. The following statements included in your report in connection with my name and what appears to be information provided to you from multiple data bases are false:

1. Sioux Falls, South Dakota 57117

   I have no knowledge of this address, have never set foot in Sioux Falls, South Dakota and have never used such an address for any purpose, at any time.

2. 88 Greenfield Lane, Scituate, MA 02066 from 1987-2005.

   This data is incorrect and fails to correctly report that from approximately 1987-1991 I was married to Rajan Varad and resided within the marriage at 3 Pleasant Street, Burlington MA 01803.

The false entries must be corrected immediately. The false data constitutes a red flag to alert me to the fact that there is likely additional false and injurious information being disseminated within background reports in connection with my name. I have contacted an attorney who specializes in this area of law and will contact you further after I have consulted with her.

I request that you provide me with the names of each and every data base that generated information utilized in your report on me. I can be reached at 781 545 5506 if you have any questions.

Sincerely,

Christine M. Varad

C. Varad
Exhibit No. 11
Date: 04/18/07
Reporter: P.A. Bucko

CHRISTINE VARAD
P.O. BOX 586
MILTON, MASSACHUSETTS 02186

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 12

Steven E. Gall
Gall and Gall Company
8555 North Dixie Drive
Dayton, Ohio 45414

Fax: 937 264-4909

April 16, 2006

**RE: File Number: 75270/ES1165 : Varad, Christine**

Dear Mr. Gall,

I am in receipt of your letter to me dated April 5, 2006. I note that a copy of an "updated" report was also included. Your letter states that "per my request" you have updated your files relative to your "Address Source Manager" data base in regard to my name.

I dispute your assertion that I requested the changes that you appear to have made to your report.

The "updated" report you provided by certified mail continues to incorrectly state that my address was 88 Greenfield Lane, Scituate MA 02066 from June 1989 through August 2005.

In my letter to you dated April 3, 2006 I stated that this information was incorrect and false. I informed you, yet again and in writing on April 3, 2006, of the period of time during which I was married to Rajan Varad and my address was 3 Pleasant Street, Burlington, MA 01803. This marriage is a matter of public information. Supporting documentation may be readily accessed by you or your representatives and or Lexis Nexis ACCUPRINT within Middlesex County, Massachusetts databases. In addition, I will be happy to provide you with a certified marriage certificate should that become necessary. Please correct your "Address Source Manager" immediately and provide me and F&W Publishing with an accurate report.

Neither Gall and Gall nor Lexis Nexis ACCUPRINT may knowingly and intentionally disseminate false and incorrect information relative to my name and addresses. Intentional, knowing omission and failure to report the Burlington Massachusetts address constitutes an unfair and deceptive practice actionable in the state of Massachusetts pursuant to M.G.L. c. 93 et seq. especially where the information is public and readily available to both of companies.

I can be reached at 781 545 5506 if you have any questions.

Sincerely,

Christine M. Varad

C. Varad
Exhibit No.12
Date: 04/18/07
Reporter: P.A. Bucko

CHRISTINE VARAD
P.O. BOX 586
MILTON, MASSACHUSETTS 02186

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTINE VARAD, | ) | |
| | ) | C.A. No. 06 CA 11370 MLW |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| REED ELSEVIER INCORPORATED, | ) | |
| d/b/a LexisNexis, Lexis Nexis Risk & Information | ) | |
| Analytics Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 13

RECEIPT #
AMOUNT $ 350.00
SUMMONS ISSUED Y
LOCAL RULE 4.1 -
WAIVER FORM -
MCF ISSUED -
BY DPTY. CLK. D. Torres
DATE 8/8/2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2006 AUG -8 A 10: 50
U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Docket No.:

Christine. Varad,
Plaintiff,

v.

Reed Elsevier Incorporated,
d.b.a. *Lexis Nexis Corporation*,
*Lexis Nexis Accurint*,
Defendant.

06 CA 11370 MLW

**COMPLAINT**

MAGISTRATE JUDGE Dein

**PARTIES**

1. Christine Varad is a citizen of the United States residing in the District of Massachusetts in the town of Scituate in Plymouth county;

2. **Defendant Reed Elsevier Incorporated, d.b.a. *Lexis Nexis Corporation, Lexis Nexis Accurint*,** is a corporation conducting business at 275 Washington Street in the city of Newton, Middlesex County, Massachusetts, incorporated under the laws of the State of Ohio and engaged in the business of providing data and data related services and products.

**JURISDICTION**

3. Plaintiff is alleging a violation of her rights under the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq ("FCRA");

4. This court has jurisdiction over the present case under 28 U.S.C.A. sec. 1331, which grants the federal district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States;

5. This court has jurisdiction under 28 U.S.C.A. sec. 1343(a)(4) which grants the district courts original jurisdiction over any civil action authorized by law to be commenced by any person to recover damages or secure equitable relief or other relief under any Act of Congress providing for the protection of civil rights;

6. This court has jurisdiction under 28 U.S.C.A. sec. 1367(a) which grants the district courts supplemental jurisdiction over all other claims that are so related to claims in the action

C. Varad
Exhibit No.13
Date: 04/18/07
Reporter: P.A. Bucko

that they form part of the same case or controversy under Article III of the United States Constitution;

7. Venue is proper under 28 U.S.C.A. sec. 1391(b)(2), as a substantial part of the events giving rise to this claim occurred within the District of Massachusetts.

## CAUSE OF ACTION

1. On June 3, 2006, Plaintiff served a demand for relief letter as to unfair and deceptive business practices of Lexis Nexis, Lexis Nexis Accurint, pursuant to the provisions of Massachusetts General Laws, chapter 93A, § 9, and federal standards as set forth in FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244 n.5 (1972) by certified mail on James Swift, Operations Manager, Lexis Nexis Accurint, 6601 Park of Commerce Boulevard, Boca Raton, Florida;

2. On April 17, 2006, Plaintiff had requested in writing pursuant to the Fair Credit Reporting Act, FCRA 15 U.S.C. 1681 et seq. and M.G.L. c. 93 § 50-62 inclusive, a complete copy of her file as held by Lexis Nexis Accurint, and as, upon information and belief, disseminated to Steven Gall, Gall and Gall Company, 8555 North Dixie Drive, Dayton, Ohio, the Massachusetts Board of Bar Examiners, 77 Franklin Street, Boston, Massachusetts, the Maine Board of Bar Examiners, P.O. Box 140, Augusta, Maine, the National Conference of Bar Examiners, 402 W. Wilson Street, Madison, Wisconsin and others;

3. After reviewing the contents of the Gall and Gall background check report and finding that the report contained patently false information Plaintiff requested an opportunity to contact the source database, Lexis Nexis Accurint in order to dispute and correct any and all improper, injurious and incorrect information. Lexis Nexis Accurint refused to provide for inspection of the file and refused allow for correction of false and incorrect file data;

4. Plaintiff notified Lexis Nexis Accurint in writing that Gall and Gall Co. had pointed to Lexis Nexis Accurint as the sole source of false and injurious information that was being disseminated to Plaintiff's employer and to others;

5. Plaintiff requested an opportunity to completely investigate all of the data contained in the Lexis Nexis Accurint file and of each and every database utilized to compile that file information including all data as publicly advertised by Lexis Nexis Accurint to be routinely contained in such files or "sub second access" information detailing historical addresses, associates, relatives, business affiliates and assets of the target individual. In total, Plaintiff requested that Lexis Nexis Accurint provider her with a complete copy of her file;

6. Plaintiff requested (1) a record of each and every inquiry relating to a credit transaction of any kind, her name and the Lexis Nexis Accurint databases and files for the last two years to include (2) the name and address of each and every source of data on me as provided to and utilized by Lexis Nexis Accurint and (3) the names and addresses of the recipients of each and every inquiry request;

7. Lexis Nexis Accurint unfairly and deceptively failed to provide access to the file and responded in writing on April 20, 2006 by unfairly and deceptively (1) claiming as explanation for its failure to provide any requested date that Lexis Nexis Accurint is not a consumer reporting agency subject to the jurisdiction of 15 U.S. C. §1681 et seq.;

8. Lexis Nexis Accurint negligently, unfairly and deceptively claimed as explanation for the failure to provide access to the data, (2) that "Lexis Nexis Accurint data is not permitted to be utilized to make employment decisions" to thereby invoke the regulations of the Fair Credit Reporting Act;

9. Upon information and belief, the unfair and deceptive actions of Lexis Nexis Accurint were performed negligently, willfully and knowingly. The written characterizations of the actions and responsibilities of Lexis Nexis Accurint and the subsequent treatment of Plaintiff's requests for data were unfair and deceptive, violated the above cited state and federal statutes as well as general principles of fair dealing and public policy.

10. Plaintiff had received no file data or information in response to her multiple requests for information and as a result is wholly unable to relieve the injury and harm created and perpetuated by Lexis Nexis Accurint data dissemination, protect herself from additional injury and harm by stopping future dissemination of false and injurious data or correct and mitigate all previous injury that the Lexis Nexis Accurint data has already caused her.

11. Where Lexis Nexis knew, or should have known, that (1) Gall and Gall Company is engaged in the business of providing employment background checks and (2) that Gall and Gall Company routinely uses data supplied to it by Lexis Nexis Accurint to provide background check reports to client/employers for decision-making purposes as to prospective employees, (3) where Lexis Nexis Accurint openly, knowingly and routinely permits Gall and Gall Company to use Lexis Nexis Accurint data for employment decision making purposes; (4) where Lexis Nexis Accurint is the sole source and holder of the injurious data; that Lexis Nexis Accurint's own actions subjected itself to the jurisdiction and authority of the Fair Credit Reporting Act, M.G.L. c. 93 and every single other related state and federal common law, statute and regulation governing such data compilation, retention and dissemination and that such failures resulted in a negligent, knowing and unfair deception and failure to afford Plaintiff her rights under the law thereby causing severe injury and damage.

12. As a result of the negligent conduct and unfair and deceptive acts and practices of Lexis Nexis Accurint, Plainiff has suffered injury, including defamation, loss of employment and professional licensing opportunities and severe financial loss.

13. Defendant's actions were negligent, willful and wanton and in reckless disregard for Plaintiff's federally protected rights and culminated in defamation, disadvantage, injury and severe financial loss and warrants the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1. For injunctive relief ordering defendants to:
   (1.) Immediately stop disseminating data, information or related services, to any and all individuals or entities, for any purpose, in connection with the plaintiff's name or identity until this court finds that they have fully complied with the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq ("FCRA") and M.G.L. c. 93,
   (2.) Provide forthwith all of the lawfully requested data and information,
   (3.) Allow full and open access to my representative to Lexis Nexis Accurint premises and electronic databases to verify and insure that all data has been (a) properly provided as demanded and (b) corrected to prevent any additional fraud or injury;

2. For an award of compensatory damages to the Plaintiff equal to the injury she has suffered due to defendant's acts of negligence, defamation and unfair and deceptive business practices, in an amount to be determined at trial,

3. For an award compensating Plaintiff for lost employment and lost professional licensing opportunities as resultant from the Defendant's pattern of defamatory conduct, negligence, fraudulent data dissemination and unfair and deceptive business practices;

4. For an order awarding Plaintiff her costs of suit, including litigation expenses, out-of-pocket expenses and if appropriate, reasonable attorney's fees in accordance with all provisions of law;

5. Grant Plaintiff such further and additional relief, as this court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby Demands a Jury Trial in this Action.

Respectfully Submitted,

Date: 8/8/06

Christine M. Varad
88 Greenfield Lane
Scituate, MA 02066
(781) 545-5506

## CERTIFICATE OF SERVICE

This certifies that the enclosed complaint was sent by certified mail to the attorney of record for the defendant:

John M. Byne
Director and Corporate Counsel
Lexis Nexis Corporation, Lexis Nexis Accurint
6601 Park of Commerce Boulevard
Boca Raton, Florida 33487
561 999 4436

Date: 8/8/06

Christine M. Varad
88 Greenfield Lane
Scituate, MA 02066
(781) 545-5506

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTINE VARAD, )
) C.A. No. 06 CA 11370 MLW
Plaintiff, )
v. )
)
REED ELSEVIER INCORPORATED, )
d/b/a LexisNexis, Lexis Nexis Risk & Information )
Analytics Group, Inc., )
)
Defendant. )

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT REED ELSEVIER INC.'S MOTION FOR SUMMARY JDUGMENT**

# TAB 7 – EXHIBIT 14

# AFFIDAVIT OF CHRISTINE M. VARAD

B

I, Christine M. Varad, state the following under pain and penalty of perjury:

1. I have never been to Sioux City, South Dakota, never held a post office box in Sioux City, South Dakota and do not know of any valid reason for a Sioux City, South Dakota address to be correctly associated with my name, birth date and social security number or to appear twice in a Lexis Nexis Accurint generated address history report on me;

2. Legitimate address history information such as my former marital address in Burlington, Massachusetts was missing from the Lexis Nexis Accurint address history report so that when I truthfully included that address information as requested by employment and Bar applications it appeared as though I was being untruthful regarding my address history to thereby further defame and libel me concerning legitimate address history information conspicuously missing from the Lexis Nexis Accurint background report;

3. It is my belief and understanding that F&W Publishing, Adams Media, based on the background report concluded that I had lied on my employment application by intentionally failing to respond truthfully to specifically requested address history information;

4. I formed a belief based on the assertions of the Lexis Nexis Accurint web site that information is provided by Lexis Nexis Accurint to government agencies and law enforcement and state court representatives through the Lexis Nexis database;

5. I formed a belief based on information provided to me by an employee of the Special Investigative Unit of the State of Massachusetts, Department of Social Services, that State of Massachusetts agencies, law enforcement and court representatives routinely access and utilize information and data provided to them by Lexis Nexis Accurint;

6. It is my understanding and belief that the employee is willing to testify under oath should such become necessary.

7. I formed a belief that Lexis Nexis Accurint reported the same false, misleading and libelous address information and data concerning my address history was reported to government agencies and law enforcement and court representatives of the State of Massachusetts as was reported to Gall and Gall Company and subsequently F&W Publishing, Adams Media based on information provided to the general public by the Lexis Nexis Web site and verification of state use and access of Lexis Nexis databases as provided to me by the State of Massachusetts, Special Investigative Unit, Department of Social Services employee.

C. Varad
Exhibit No.14
Date: 04/18/07
Reporter: P.A. Bucko

8. Upon information and belief the State of Massachusetts Board of Bar Examiners and the State of Maine Board of Bar Examiners as state court departments and law enforcement representatives access Lexis Nexis Accurint data and information.

9. I have been asked to provide complete address history information on applications I submitted for admission to the Bar in the State of Massachusetts and the State of Maine and applications I submitted to the National Conference of Bar Examiners.

10. Upon information and belief Lexis Nexis Accurint provided the same defamatory and libelous address history information on me that it provided to Gall and Gall Company and F&W Publishing, Adams Media to the State of Massachusetts Board of Bar Examiners, the State of Maine Board of Bar Examiners and the National Conference of Bar Examiners to again defame and libel me, interfere with my professional reputation, access to professional licensing, professional organizations and adversely affecting my ability to earn a living in my chosen profession.

11. The defamatory address history information does not appear on credit reports I have reviewed generated by my name and social security number from national credit reporting agencies Trans Union, Experian and Equifax.

12. Where no source is ever identified as the provider of the defamatory computer data by Lexis Nexis Accurint I am left with no mechanism to defend my name, identity and interests against past harms or continued injury and harm due to the continued, unfettered dissemination of that false data, or any other now unknown additional false data, and I am left with no avenue to stop that defamation or protect myself where pertinent statutory rights and protections are not enforced.

October 27, 2006

Christine M. Varad